UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

VALERIE FLORES,

Plaintiff,

v. 1:26-CV-0148 (GTS/ML)

JENNIFER MNOOKIN; JAY ROTHMAN; and SHANNON BLOMSTROM KORATKO,

Defendants.

---

APPEARANCES: OF COUNSEL:

Valerie Flores
Plaintiff, *Pro Se*
Post Office Box 1110 ACP 5749
Albany, New York 12201

MIROSLAV LOVRIC, United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

Plaintiff Valerie Flores ("Plaintiff") filed this *pro se* complaint against Defendants Jennifer Mnookin, Jay Rothman, and Shannon Blomstrom Koratko (collectively "Defendants") alleging violations of her rights. (Dkt. No. 1.) Plaintiff did not pay the filing fee and seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 21.) For the reasons set forth below, I (1) grant Plaintiff's third amended IFP application, and (2) recommend that the Complaint be dismissed in its entirety without leave to amend.

## I. BACKGROUND

Construed as liberally[1] as possible, the Complaint alleges violations of Plaintiff's rights by Defendants. (*See generally* Dkt. No. 1.)

More specifically, the Complaint alleges that Defendants engaged in a campaign of harassment dating back to 2012 whereby they utilized personalized license plates and individuals by the name of Jennifer to harass Plaintiff. (*Id.*) The Complaint appears to assert claims of "[a]ggravated harassment" and interstate stalking. (Dkt. No. 1 at 3.) As relief, Plaintiff seeks $4,000,000 in damages. (Dkt. No. 1 at 4.)

## II. PLAINTIFF'S THIRD AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1).[2] After reviewing Plaintiff's third amended

---

[1] The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[2] The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

IFP application (Dkt. No. 21), the Court finds that Plaintiff meets this standard.[3] Therefore, Plaintiff's third amended application to proceed IFP is granted.[4]

## III. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

---

[3] Plaintiff is a prolific filer; she is cautioned that proceeding IFP is a privilege, not an unqualified right. The continued filing of frivolous lawsuits may result in the denial of a request to proceed IFP in an action.

[4] Plaintiff is reminded that, although her IFP application has been granted, she is still required to pay fees that she may incur in this action, including copying and/or witness fees.

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe her pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

First, Plaintiff's Complaint is frivolous and nonsensical. By way of example, in the portion of the form Complaint which solicits the location of the events giving rise to her claims, Plaintiff alleges as follows:

> They have been all over the country in multiple states harrassing me with personalized plates & just plain terrorizing me & started doing this to me in 2012. It affects my everyday life what they have been doing to me.

(Dkt. No. 1 at 4 [errors in original].) Moreover, in the portion of the form Complaint asking the date and approximate time of the events giving rise to her claims, Plaintiff alleges:

> 2012 – ongoing (all over the continental United States) I received a harrassing text from a Rx company and the woman's name was Jennifer.

(*Id*. [errors in original].) Further, in the portion of the form Complaint soliciting the facts underlying her claims, Plaintiff alleges as follows:

> I have submitted multiple pictures in multiple cases of personalized plates. One police agency acknowledged that they believed UW-Madison to be the culprits. This terror has gone on for 14 years. I have a cracked windshield currently & believe I have been dealing with vandalism to my car since 2012. Jay Rothman stole a souvenoir I had in my purse that was in no way contraband & may have stolen it again & they may be trying to sell the maroon North Face purse on E-bay (in Ohio). Its stolen.

(Dkt. No. 1 at 5 [errors in original].)

Plaintiff's claims are precisely the type of fanciful or delusional allegations that warrant dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) as factually frivolous. *See, e.g., Gladney v. Pendleton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002) (holding that suit may be dismissed where facts alleged in complaint are "so nutty ('delusional' is the polite word) that they're unbelievable, even though there has been no evidentiary hearing to determine their truth or falsity"); *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (explaining that an action is frivolous when "the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy") (internal quotation marks omitted).

As a result, I recommend that Plaintiff's Complaint be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

Second, in the alternative, I recommend that the Complaint be dismissed for failure to state a claim upon which relief may be granted.

More specifically, to the extent that Plaintiff asserts a claim of interstate stalking pursuant to 18 U.S.C. § 2261(a), it is a criminal statute and does not "confer a private right of action on Plaintiff." *Flores v. KW Call Center Services*, 26-CV-0122, 2026 WL 1481648, at *3 (N.D.N.Y.

May 27, 2026) (Sannes, C.J.). As a result, I recommend that any claims under 18 U.S.C. § 2261(a) be dismissed. *See Fata v. Arcelly*, 26-CV-2185, 2026 WL 1831673, at *7 (E.D. Pa. June 25, 2026) (citing *Weisman v. Baur*, 20-CV-6100, 2021 WL 3403519, at *2 (E.D. Pa. Aug. 4, 2021) (dismissing civil claim brought under 18 U.S.C. § 2261A); *Humphrey v. Pa. Ct. of Common Pleas of Phila.*, 20-CV-2335, 2021 WL 268498, at *2 n.3 (E.D. Pa. Jan. 27, 2021) ("[N]umerous federal courts have held that no private right of action exists under [the Violence Against Women Act, 18 U.S.C. § 2261-2262].")) (holding that "there is no private right of action under [18 U.S.C. § 2261A].").

Further, to the extent that the Complaint is construed as asserting a claim of aggravated harassment under New York Penal Law §240.30, there is no private right of action for violation of this criminal statute. *Cruz v. New York City Transit*, 24-CV-0089, 2025 WL 209598, at *10 (S.D.N.Y. Jan. 16, 2025), *report and recommendation adopted by*, 2025 WL 618557 (S.D.N.Y. Feb. 26, 2025).

Moreover, to the extent that Plaintiff's stalking and harassment claims are construed as pursuant to New York common law, New York does not recognize private causes of action for harassment and stalking. Thus, I recommend that those claims be dismissed. *Graham v. UMG Recordings, Inc.*, 806 F. Supp. 3d 454, 476 (S.D.N.Y. 2025) ("New York does not recognize a civil cause of action for harassment."); *Jones v. L3 Harris*, 730 F. Supp. 3d 26, 29 (W.D.N.Y. 2024) (citing *Robinson v. Williams*, 22-CV-0982, 2023 WL 3352758, at *9 (N.D.N.Y. Jan. 12, 2023) (Lovric, M.J.), *adopted* 2023 WL 2986825 (N.D.N.Y. Apr. 18, 2023)) ("It is well-settled that 'there is no private cause of action for stalking or general harm.'").

As a result, I recommend, in the alternative, that the Complaint be dismissed for failure to state a claim upon which relief may be granted.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[5]

Here, a better pleading could not cure the deficiencies identified with Plaintiff's claims. Although the usual practice is to allow leave to replead a deficient complaint, *see* Fed. R. Civ. P. 15(a); *see also Ronzani v. Sanofi, S.A.*, 899 F.2d 195, 198 (2d Cir. 1990), especially where a complaint has been submitted *pro se*, *see Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994), "a court may dismiss a case without allowing leave to amend 'where the substance of the claim

---

[5] *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

pleaded is frivolous on its face,'" *Harris v. U.S. Secret Serv.*, 605 F. Supp. 3d 410, 414 (N.D.N.Y. 2022) (quoting *Salahuddin*, 861 F.2d at 42, and dismissing complaint without leave to amend because the plaintiff's claim rested "solely on his demonstrably false belief that he is president" and "granting leave would not cure the defects of the complaint").

"Plaintiff's claims in this case are based on fantastical allegations that scores of [individuals are harassing her using personalized license plates and she has interacted with women named Jennifer throughout the course of the last fourteen years]. Affording Plaintiff an opportunity to amend would not cure the fact that the substance of h[er] complaint is factually frivolous on its face." *Lang v. Clinton*, 761 F. Supp. 3d 595, 602 (W.D.N.Y. 2024), *appeal dismissed*, No. 25-126, 2025 WL 1982319 (2d Cir. May 21, 2025), *cert. denied,* No. 25-7273, 2026 WL 1855058 (U.S. June 29, 2026). As a result, I recommend that the Court decline to grant Plaintiff leave to amend.

PLAINTIFF IS ADVISED THAT SHE SHOULD NOT SEEK TO FILE A MOTION TO AMEND HER COMPLAINT UNTIL UNITED STATES DISTRICT JUDGE SUDDABY RULES ON THIS COURT'S RECOMMENDATIONS WITH RESPECT TO PLAINTIFF'S COMPLAINT. ANY AMENDED COMPLAINT OR MOTION TO AMEND BEFORE JUDGE SUDDABY'S DECISION WITH RESPECT TO THIS COURT'S RECOMMENDATIONS WILL BE STRICKEN AS PREMATURE AND WILL NOT BE CONSIDERED BY THE COURT. As noted below, however, Plaintiff may file objections to this Court's recommendations.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's third amended application to proceed *in forma pauperis* (Dkt. No. 21) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED in its entirety without leave to amend** pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[6]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: September 9, 2026
Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

6 The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

7 If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,
v.
Andrew PETERS, Warden, Watertown Correctional Facility; Joseph Williams, Warden, Lincoln Work–Release Center; Francis J. Herman, Senior Parole Officer Interstate Bureau; T. Stanford, Senior Parole Officer; Deborah Stewart, Parole Officer; John Doe # 1, Parole Agent, Watertown Correctional Facility; John Doe # 2, Parole Agent, Lincoln Work Release Center; Susan Bishop, Director of Interstate Compact, South Carolina; Cecil Magee, Parole Officer, South Carolina; Frank Barton, Parole Officer, South Carolina; John McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg, PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The Capitol Albany, NY, for defendants Peters, Herman Stewart, Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant Attorney General, Carl N. Lundberg, Chief Legal Counsel, South Carolina Department of Probation, Columbia, SC, for defendants Bishop, Magee, Barton, McMahan, and Stanford, Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

***1** The above matter comes to me following a Report–Recommendation by Magistrate Judge Daniel Scanlon, Jr., duly filed on April 17, 1997. Following ten days from the service thereof, the Clerk has sent me the entire file, including any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil rights action on November 17, 1995. On February 12, 1996, Magistrate Judge Scanlon ordered Brown to submit an amended complaint alleging the specific acts committed by the individuals named as defendants which Brown claimed violated his constitutional rights. Brown filed an amended complaint on March 21, 1996. In his amended complaint, Brown alleged that defendants violated his rights under the Eighth and Fourteenth Amendments by failing to process properly his interstate compact paperwork, resulting in Brown being imprisoned pursuant to a parole hold when in fact he had never violated the conditions of his parole. For a more complete statement of Brown's claims, see his amended complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On August 19, 1996, defendants Bishop, Magee, Barton, and McMahan made a motion to dismiss the complaint against them or, in the alternative, for summary judgment. Dkt. No. 20. On October 17, 1996, defendants Herman, Stewart, and Stanford made a motion to dismiss for failure to state a claim. Dkt. No 34. On April 17, 1996, Magistrate Judge Scanlon recommended that all defendants' motions to dismiss be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the magistrate judge's report-recommendation, having been granted additional time in which to do so. Dkt. No. 52. In addition, Brown filed on June 9, 1997, a motion for leave to file a second amended complaint and a copy of his proposed amended complaint. Dkt. No. 53. I turn first to the last motion filed, Brown's motion for leave to amend his complaint a second time.

Brown seeks to file a second amended complaint "setting forth in detail the personal involvement of each defendant and how their acts of commission and omission served to deprive plaintiff of Constitutionally secured rights." Dkt. No. 53. The district court has discretion whether to grant leave to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993). In exercising that discretion, the court should freely grant leave to amend when justice so requires. Fed.R.Civ.P. 15(a). However, the court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional allegations against the named defendants. However, the additional allegations fail to cure the deficiency which

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

***2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, *2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

no clear error on the face of the record in order to accept the recommendation").

***3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim.*

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

***4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

***5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

**DISCUSSION**

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See* *LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See* *Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

***6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

***7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

**CONCLUSION**

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1 I note, however, that the report-recommendation would survive even *de novo* review.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 618557
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Marisol CRUZ, Plaintiff,
v.
NEW YORK CITY TRANSIT AUTHORITY - MTA, Collective Bargaining Manager Martense Avitus, Afiya Garcia-Austin, Tanya Forrester, Sandrea Flowers, Deborah Felice, Sade Kronagay, and R Wallace, Defendants.

24 Civ. 89 (AT) (HJR)
|
Signed February 25, 2025
|
Filed February 26, 2025

**Attorneys and Law Firms**

Marisol Cruz, New York, NY, Pro Se.

Renee Lucille Cyr, Steve S. Efron, Steve S. Efron, Attorney at Law, New York, NY, for Defendants.

**ORDER ADOPTING REPORT AND RECOMMENDATION**

ANALISA TORRES, District Judge:

***1** Plaintiff *pro se*, Marisol Cruz, a former New York City Transit Authority ("MTA") station agent, brings this action against Defendants, MTA, Martense Avitus, Afiya Garcia-Austin, Tanya Forrester, Sandrea Flowers, Deborah Felice, Sade Kronagay, and R. Wallace, alleging that Defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; the New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code § 8-101 *et seq.*; and New York's criminal prohibition on "aggravated harassment," N.Y. Penal Law § 240.30, by discriminating against her on the basis of religion and disability. *See generally* Compl., ECF No. 1.

After Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) and (b)(6), the Court referred the motion to the Honorable Katharine H. Parker for a report and recommendation. ECF Nos. 30, 48. The action was then redesignated to the Honorable Henry J. Ricardo, who issued a report (the "R&R") recommending that the Court grant Defendants' motion and dismiss Cruz's complaint in full. R&R at 1, ECF No. 57. Before the Court are Cruz's timely objections to the R&R. Objs, ECF No. 59; *see also* ECF No. 58. For the reasons stated below, the Court OVERRULES Cruz's objections and ADOPTS the R&R in full.

**BACKGROUND** [1]

Cruz alleges that she suffered retaliation and discrimination on the basis of religion and disability when MTA placed her on an unpaid leave of absence in early 2022 for refusing to comply with masking and test-or-vaccine requirements and denied her request for an accommodation (the "COVID Accommodation Allegations"); when Cruz was subjected to an allegedly hostile work environment upon her return to work in July 2022 (the "Post-Return Harassment Allegations"); and when she was fired in 2023 (the "2023 Termination Allegations"). R&R at 2–4; Compl. at 10–16. [2]

The R&R recommends that the Court dismiss with prejudice Cruz's NYSHRL claims arising out of the COVID Accommodation and Post-Return Harassment Allegations for lack of subject matter jurisdiction because Cruz unsuccessfully pursued these claims before the New York State Division of Human Rights ("SDHR"). R&R at 14; *see Desardouin v. City of Rochester*, 708 F.3d 102, 106 (2d Cir. 2013) (explaining that New York Executive Law § 297(9) precludes courts from exercising jurisdiction over discrimination claims first brought before a state or local human rights commission except in certain circumstances not applicable here).

Applying collateral estoppel and *res judicata* principles, the R&R also recommends that the Court dismiss with prejudice Cruz's ADA, Title VII, and NYCHRL claims arising out of the COVID Accommodation and Post-Return Harassment Allegations that were litigated in connection with Cruz's SDHR complaint because the claims are all based on the same "gravamen or are part of the same factual grouping" as the NYSHRL claims that the SDHR rejected. *Kirkland v. City of Peekskill*, 828 F.2d 104, 110 (2d Cir. 1987) (citation omitted); R&R at 14–17.

***2** To the extent Cruz's ADA and Title VII claims are based on allegations not presented to the SDHR, the R&R

recommends that the Court dismiss those claims without prejudice for failure to exhaust administrative remedies. R&R at 17–20. The R&R explains that the ADA and Title VII both require administrative exhaustion, and Cruz has not alleged or otherwise shown that she properly exhausted her claims related to allegations that post-date the filing of her SDHR complaint. *Id.* at 17–18 (citing *Soules v. Connecticut*, 882 F.3d 52, 57 (2d Cir. 2018)). Judge Ricardo considered whether the post-SDHR allegations could relate back to the earlier allegations for purposes of administrative exhaustion but found that "Cruz has not plausibly alleged that the clashes with her supervisors in the second half of 2022 and in 2023 that were not presented to the SDHR were in any way related to her earlier request for an accommodation." *Id.* at 18; *see id.* at 18–20.

Additionally, because Cruz pursued her retaliation claims related to the 2023 Termination Allegations in binding arbitration, and the arbitrator "d[id] not find that there is any basis to conclude that [Defendants'] actions were retaliatory," the R&R recommends that the Court dismiss Cruz's retaliation claims related to the 2023 Termination Allegations as barred by collateral estoppel. *Id.* at 20–22; *see Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003) (explaining that collateral estoppel may apply to issues and claims resolved in arbitration when there has been a final determination on the merits). Finally, because the R&R recommends dismissing Cruz's federal claims for the various reasons stated above, it also recommends that the Court decline to exercise supplemental jurisdiction over Cruz's remaining NYSHRL and NYCHRL claims arising out of those portions of the Post-Return Harassment Allegations not litigated before the SDHR. R&R at 22–23; *see Barr v. Macys.com, LLC*, No. 22 Civ. 7867, 2023 WL 6393840, at *6 (S.D.N.Y. Sept. 29, 2023) ("Typically courts decline to exercise supplemental jurisdiction when the federal claims are dismissed." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))). [3]

## DISCUSSION

I. Legal Standard

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court may adopt those portions of the R&R to which no objection is made "as long as no clear error is apparent from the face of the record." *Oquendo v. Colvin*, No. 12 Civ. 4527, 2014 WL 4160222, at *2 (S.D.N.Y. Aug. 19, 2014) (citation omitted).

When a party makes specific objections, the Court reviews *de novo* those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). However, when a party "makes only conclusory or general objections, or simply reiterates the[ir] original arguments," the Court reviews the R&R "strictly for clear error." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018) (citation omitted), *aff'd*, 837 F. App'x 841 (2d Cir. 2021) (summary order); *see also Bailey v. U.S. Citizenship & Immigr. Servs.*, No. 13 Civ. 1064, 2014 WL 2855041, at *1 (S.D.N.Y. June 20, 2014) ("[O]bjections that are not clearly aimed at particular findings ... do not trigger *de novo* review."); *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) ("[W]here objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [motion], reviewing courts should review a report and recommendation for clear error." (citation omitted)). An R&R is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citation omitted); *see also Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009).

II. Cruz's Objections

***3** Cruz objects to the R&R's conclusions with respect to "(1) Jurisdiction, (2) Individual liability, and (3) Retaliation." Objs. at 1–2. The Court addresses each category of objection in turn.

First, Cruz raises a general objection to the R&R's "findings in matters of jurisdiction." *Id.* at 2. Cruz states that she filed her complaint with the Equal Employment Opportunity Commission ("EEOC") within 180 days of "the discrimination act" and "was forced to file" her complaint before the SDHR only "after the EEOC impeded the progress of [her] discrimination claim." *Id.* Reading Cruz's objections liberally, it appears that Cruz challenges an argument Defendants raised in their motion to dismiss—specifically, that Cruz's Title VII and ADA claims are untimely because the SDHR complaint was filed more than 300 days after Cruz was placed on unpaid leave and MTA denied her request for an accommodation. *See* R&R at 12. In the R&R, Judge Ricardo wrote that "the Court need not reach the issue of timeliness because Cruz's federal claims based on the COVID Accommodation Allegations made in the SDHR should be

dismissed on other grounds," namely, lack of subject matter jurisdiction, *res judicata*, and collateral estoppel. *Id.* at 13. Because Cruz raises only a general and conclusory challenge to the R&R's "findings in matters of jurisdiction," Objs. at 2, the Court must review the R&R's jurisdictional conclusions for clear error, *see Harris*, 338 F. Supp. 3d at 174; *Edwards*, 414 F. Supp. 2d at 346–47. Having closely reviewed Judge Ricardo's thorough and well-reasoned R&R, the Court finds that the R&R's conclusions with respect to jurisdiction—that the Court lacks subject matter jurisdiction over Cruz's claims litigated before the SDHR, and that the Court should decline to exercise supplemental jurisdiction over Cruz's surviving state law claims—"are not clearly erroneous or contrary to law." *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008).

Second, Cruz objects to the R&R's "recommendation of no individual liability." Objs. at 2. The R&R explains that, "unlike [the] NYSHRL and NYCHRL, the ADA and Title VII do not provide for individual liability" when defendants are sued in their individual or personal capacities. R&R at 23 (collecting cases). Accordingly, the R&R recommends that, "[e]ven if the Court determines that Cruz's ADA and Title VII [claims] are not otherwise barred, they should be dismissed with regard to the individual Defendants." *Id.* The R&R's conclusion that the ADA and Title VII do not provide for individual liability is correct. *See Keitt v. City of New York*, 882 F. Supp. 2d 412, 426 (S.D.N.Y. 2011) ("Individuals [sued] in their personal capacities are not proper defendants on claims brought under the ADA." (citing *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009))); *Petrisch v. JP Morgan Chase*, 789 F. Supp. 2d 437, 454 (S.D.N.Y. 2011) ("It is well-settled that employees may not be sued in their individual capacity under Title VII." (citing *Sassaman v. Gamache*, 566 F.3d 307, 315–16 (2d Cir. 2009))). Even if the ADA and Title VII did provide for individual liability, the R&R's conclusion that Cruz's ADA and Title VII claims are "otherwise barred" under *res judicata* and collateral estoppel and for failure to exhaust administrative remedies, a conclusion to which Cruz has not objected, is not clearly erroneous. R&R at 23.

***4** Third, Cruz objects that she "engaged in protected activity and [that] Defendants aided and abetted [MTA] in increase[d] scrutiny, repeated harassment, aggravated harassment, and discharge[,] which in these circumstances is considered retaliation." Objs. at 3. Because this objection seeks to relitigate issues already raised before Judge Ricardo, the Court must review the relevant portions of the R&R for clear error. *See Edwards*, 414 F. Supp. 2d at 346–47; *Bailey*, 2014 WL 2855041, at *1. Judge Ricardo's conclusion that Cruz's claims concerning the 2023 Termination Allegations are barred by collateral estoppel following the arbitrator's adverse determination, and that Cruz's federal claims not litigated before the SDHR are otherwise barred for failure to exhaust administrative remedies, are not clearly erroneous. *See* R&R at 17, 20–22. Accordingly, this objection, too, is overruled.

The Court has reviewed the remainder of Judge Ricardo's thorough and well-reasoned R&R for clear error and finds none.

## CONCLUSION

For the foregoing reasons, the Court overrules Cruz's objections, adopts the R&R in full, and orders as follows:

1. Cruz's NYSHRL claims arising out of the COVID Accommodation Allegations and those portions of the Post-Return Harassment Allegations that were litigated before the SDHR are DISMISSED, **with prejudice**, for lack of subject matter jurisdiction;

2. Cruz's ADA, Title VII, and NYCHRL claims related to the COVID Accommodation Allegations and those portions of the Post-Return Harassment Allegations that were litigated before the SDHR are DISMISSED, **with prejudice**, as barred by *res judicata* and collateral estoppel;

3. Cruz's ADA and Title VII claims based on those portions of the Post-Return Harassment Allegations that post-date the SDHR complaint are DISMISSED, **without prejudice**, for failure to exhaust administrative remedies;

4. Cruz's claims arising out of the 2023 Termination Allegations are DISMISSED, **with prejudice**, as barred by collateral estoppel;

5. Cruz's NYSHRL and NYCHRL claims based on those portions of the Post-Return Harassment Allegations that post-date the SDHR complaint are DISMISSED, **without prejudice**, for lack of supplemental subject matter jurisdiction; and

6. Cruz's claim for "aggravated harassment" under New York Penal Law § 240.30 is DISMISSED, **with prejudice**, for failure to state a claim.

Any motion for leave to amend the complaint must be filed by **March 18, 2025**, and must be accompanied by (1) a proposed amended complaint; (2) a redline or a description of the changes from the original complaint to the proposed amended complaint; and (3) a memorandum of law explaining how the amendments address the deficiencies described in the R&R and this Order.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2025 WL 618557

## Footnotes

1 The Court presumes familiarity with the facts and procedural history of this action as detailed in the R&R and therefore summarizes only the key facts here. *See* R&R at 1–8.

2 Citations to the complaint at ECF No. 1 are to the ECF page number.

3 The R&R also recommends dismissing with prejudice Cruz's claim for "aggravated harassment" under New York Penal Law § 240.30 because the statute does not confer a private right of action. R&R at 24; *McFadden v. Ortiz*, No. 12 Civ. 1244, 2013 WL 1789593, at *3 (N.D.N.Y. Apr. 26, 2013) ("[T]here is no private right of action to enforce either state or federal criminal statutes. Therefore, even assuming, *arguendo*, that Defendants violated some criminal statutes, Plaintiff may not bring a claim based on those statutes to enforce New York [c]riminal [l]aw." (citation omitted)).

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 209598
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Marisol CRUZ, Plaintiff,
v.
NEW YORK CITY TRANSIT, et al., Defendants.

24-CV-89 (AT) (HJR)
|
Signed January 16, 2025

**Attorneys and Law Firms**

Marisol Cruz, New York, NY, Pro Se.

Renee Lucille Cyr, Steve S. Efron, Steve S. Efron, Attorney at Law, New York, NY, for Defendants.

**REPORT AND RECOMMENDATION**

HENRY J. RICARDO, United States Magistrate Judge.

***1 To the Honorable Analisa Torres, United States District Judge:**

Plaintiff Marisol Cruz, proceeding *pro se*, brings this action alleging that the New York City Transit Authority ("MTA") and its employees violated federal, state, and local employment laws, *inter alia*, by discriminating against her based on her religious beliefs and disability status. Defendants have moved to dismiss the case under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that her claims are time-barred, that she failed to exhaust administrative remedies prior to filing in federal court, that several of her claims are barred by the doctrine of issue preclusion, that her federal claims against the individual defendants are not permitted by the relevant statutes, that she lacks standing to enforce criminal statutes, and that she did not adequately plead her causes of action. For the reasons set forth below, Defendants' motion should be **GRANTED.**

## I. FACTUAL BACKGROUND

Cruz began working as a Station Agent for the MTA in 2006. Complaint ("Compl."), Dkt. No. 1, at 10. In this role, she worked in a booth providing customer service to subway riders. *Id.* In late 2021, Cruz worked at the Wall Street station on the No. 2 line. *Id.* at 10-11.

### A. Cruz's COVID Accommodation Request

In response to the COVID-19 pandemic, the Governor of New York issued a state-wide mask mandate in April of 2020. Executive Order 202.17: Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency, 9 N.Y.C.R.R. 8.202.27.[1] In response, the MTA required all employees and customers to wear masks when in the subway system. New York State Division of Human Rights ("SDHR") Complaint, filed on December 23, 2022 (the "SDHR Compl."), Dkt. No. 31-1.[2] This requirement applied to Station Agents such as Cruz. Compl. at 11. In addition to the mask requirement, Station Agents were also required either to receive a COVID-19 vaccine or to submit to weekly COVID testing. SDHR Compl. Exhibits at 4, Dkt. No. 31-2.

Cruz requested a religious exemption from the masking and test-or-vaccine requirements on December 24, 2021. Compl. at 11; Defendants' Memorandum of Law in Support of Motion to Dismiss the Complaint in its Entirety ("Def. Mem."), Dkt. No. 34, at 4–5. While she did not request a disability exemption *per se*, her religious accommodation application stated that Cruz "ha[d] a disability" and was "protected under the American with Disabilities Act." *Id.*

***2** During the week following her request, but before the MTA ruled on it, Cruz reported to work without a mask. *Id.* As a result, she was referred to the MTA Labor Relations Department. *Id.*; Compl. at 11. After continuing to refuse to wear a mask at work on December 30, Cruz was placed on an unpaid leave of absence. *Id.*; Def. Mem. at 5. Cruz filed for unemployment insurance on January 12, which she ultimately received. Compl. at 12–13.

On January 19, 2022, the MTA denied Cruz's request for accommodation, determining that it would pose an undue hardship due to safety concerns. SDHR Compl. Exhibits at 4. Cruz alleges that she was not made aware of this denial until April 21, 2022. Compl. at 12. For ease of reference, Cruz's allegations concerning her request for an accommodation with respect to COVID-related rules and her unpaid leave of absence in early 2022 are referred to as the "COVID Accommodation Allegations."

### B. Cruz's Return to Work and Alleged Harassment

On July 11, 2022, Cruz returned to work at the MTA, but at a different station, the 8th Street station, and with a

different supervisor.[3] Compl. at 13. Although Cruz alleges that her new supervisor, Sade Kornagay, "made references" to her previous work location, she does not allege that Kornagay mentioned or was aware of Cruz's 2021 request for accommodation. *Id.*

Cruz experienced friction with Kornagay soon after returning to work. She alleges that on August 16, 2022, Kornagay "created a hostile work environment." Compl. at 13–14. The Complaint alleges a number of other harassing actions committed by Kornagay and other supervisors in late 2022 and the first half of 2023. *Id.* For ease of reference, Cruz's allegations concerning the period from when she returned to work in July 2022 up to the June 9, 2023, incident described below are referred to as the "Post-Return Harassment Allegations."

**C. Cruz's 2023 Termination**

On June 9, 2023, defendant Deborah Felice was called to the 8th Street station where Cruz was working after a dispute between Cruz and a cleaning team. Compl. at 15; Def. Mem. at 14. Following this dispute, Cruz did not return to work at her assigned workplace. Compl. at 15; Def. Mem. at 14. On June 28, 2023, Cruz "returned to work" at the MTA's Labor Relations office. Compl. at 16. On July 5, 2023, Cruz was suspended without pay and the MTA began the disciplinary process that ultimately resulted in her termination in August 2023. *Id.* The hostile acts alleged by Cruz during this period primarily involved her workplace attire and physical entrance into her workspace; none involved or referenced the MTA's mask policy or its test-or-vaccine policy. *Id.* For ease of reference, Cruz's allegations concerning the June 9, 2023 incident and events that followed it, including her termination from the MTA, are referred to as the "2023 Termination Allegations."

**D. The 2022 SDHR Complaint**

On December 23, 2022, Cruz filed a discrimination complaint with the SDHR. SDHR Compl. at 12. In the SDHR Complaint, Cruz alleged that she had been discriminated against on the basis of her religious beliefs and her disability, identified as asthma. *Id.* The SDHR complaint cited the specific acts of the denial of a religious accommodation and being placed on unpaid leave as the basis for her claim. *Id.* at 15. Thus, the SDHR Complaint included Cruz's COVID Accommodation Allegations.

***3** In the narrative portion of the SDHR Complaint, Cruz also referenced disputes with her supervisor at the 8th Street station since returning to work in July 2022, claiming that Kornagay "harassed" her and alleging a November 15, 2022 incident in which the MTA "interfered" with Cruz's attempt to file a police report against Kornagay complaining of harassment. *Id.* at 19. Thus, the SDHR complaint contained at least some of the Post-Return Harassment Allegations based on events from June 8, 2022 through at least November 15, 2022.

The SDHR Complaint did not explain how these Post-Return Harassment Allegations related to Cruz's religious beliefs or disability, beyond the single assertion that Kornagay asked if Cruz had previously worked at the Wall Street station. *Id.* Although the SDHR Complaint was not initially filed with the federal Equal Opportunity Employment Opportunity Commission ("EEOC"), it was considered simultaneously filed with the EEOC. Dkt. No. 34-3.

On September 19, 2023, the SDHR issued its ruling. Determination and Order After Investigation ("SDHR Determination"), Dkt. No. 34-4. The SDHR found that there was no probable cause to believe that the MTA had engaged in the unlawful discriminatory practices alleged. *Id.* at 1. It also found that the MTA's decision to place Cruz on unpaid leave due to her refusal to wear a mask or submit to regular COVID testing was a reasonable accommodation. *Id.* at 3. Thus, the SDHR adjudicated claims based on Cruz's COVID Accommodation Allegations.

The SDHR Determination also addressed certain of Cruz's Post-Return Harassment Allegations, finding that Cruz demonstrated neither that the behavior she complained of after her return to work constituted harassment nor that it was related to her religious beliefs or disability in any way. *Id.* at 3–4. More specifically, the SDHR Determination addressed incidents involving Kornagay that occurred on August 16 and November 15, 2022, but did not address any Post-Return Harassment Allegations occurring in 2023. There is no allegation or other showing that Cruz appealed from the SDHR Determination in New York state court.

On October 26, 2023, the EEOC adopted the SDHR's findings. Compl. at 20.

**E. The 2023 Arbitration**

After the MTA suspended Cruz without pay in July 2023 in connection with the June 9, 2023 incident, Cruz contested

the MTA's disciplinary actions through a hearing before an independent arbitrator, pursuant to the collective bargaining agreement between the Transit Workers' Union and the MTA. In the Matter of the Arbitration of New York City Transit Authority and Transport Workers Union Local 100 re: Marisol Cruz; Pass #XXXXXX, DANS: 23-2757-0090 and 23-2757-0091, by Arbitrator Philip L. Maier, dated October 23, 2023 ("Arb. Opinion"), Dkt. No. 34-5.[4] At the arbitration, Cruz made similar claims of harassment by her supervisors in 2022 and 2023 that she makes in the present action (*i.e.*, the Post-Return Harassment Allegations), and contended that her termination was retaliation for attempts to obtain redress for this harassment. *Id.* at 8–9; Pl. Opp. at 77–78. The independent arbitrator found that the MTA had just cause to terminate Cruz. Arb. Opinion at 9–10.

## II. PROCEDURAL HISTORY

***4** Cruz filed the Complaint on January 2, 2024. Dkt. No. 1. In addition to the MTA itself, she named seven individual MTA employees as defendants: Martense Avitus, Afiya Garcia-Austin, Tanya Forrester, Sandrea Flowers, Deborah Felice, Sade Kornagay, and R. Wallace. *Id.* at 2–7. She alleges that Defendants violated Title VII of the Civil Rights Act of 1974 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–297, and New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code §§ 8-101–131. Compl. at 3–8. She also alleges that Defendants committed "aggravated harassment" in violation of New York Penal Law § 240.30. *Id.* at 8.

For relief, Cruz seeks a return to employment, compensation for lost wages, a restoration of her pension, compensatory damages for pain and suffering and damage to her reputation, and punitive damages. *Id.* at 18.

On May 6, 2024, Defendants moved to dismiss the complaint. Dkt. No. 30. In support of this motion, they filed a memorandum of law, as well as the complete record of the SDHR proceeding and the arbitration opinion and award. Dkt. No 34. Cruz filed a Declaration of Marisol Cruz in Opposition to Motion to Dismiss ("Pl. Opp.") on July 15, 2024. Dkt. No. 43. On August 1, 2024, Defendants filed their Reply Memorandum of Law ("Def. Reply"). Dkt. No. 46. On August 6, 2024, this case was referred to Magistrate Judge Katharine H. Parker for a report and recommendation on the motion to dismiss. Dkt. No. 48. On August 29, 2024, the case was referred to the undersigned.

## III. LEGAL STANDARDS

### A. Rule 12(b)(1) Motion to Dismiss

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction)." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-31, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Where subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.' " *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)).

In considering a Rule 12(b)(1) motion, a court "must accept as true all material factual allegations in the complaint." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but ... may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* In resolving a Rule 12(b)(1) motion, a court may also "consider 'matters of which judicial notice may be taken.' " *Greenblatt v. Gluck*, No. 03-CV-597 RWS, 2003 WL 1344953, at *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993)).

### B. Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, a court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013). To survive dismissal, a plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Facial plausibility exists when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct.

1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "Importantly, the 'plausibility' standard applies only to a complaint's *factual* allegations. [The Court] give[s] no effect at all to 'legal conclusions couched as factual allegations.' " *Citigroup, Inc.*, 709 F.3d at 135 (quoting *Port Dock & Stone Corp. v. Oldcastle Northeast., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007)).

**C. Standards for *Pro Se* Litigants**

***5** While *pro se* complaints are read liberally "to raise the strongest arguments they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted), they must still state a plausible claim for relief. *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013). Thus, a district court should dismiss a *pro se* plaintiff's complaint if it "fail[s] to meet minimum pleading requirements." *Kinsey v. Bloomberg*, No. 12-CV-8936 (PAE) (JCF), 2014 WL 630670, at *3 (S.D.N.Y. Feb. 18, 2014).

Submissions made by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (internal quotations omitted); *see also* *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts are "obligated to construe a *pro se* complaint liberally"). As a result, the Court may consider allegations that appear in a *pro se* plaintiff's motion papers or other submissions to the Court as well as in his pleadings. *See, e.g.*, *Freud v. N.Y.C. Dep't of Educ.*, No. 21-CV-2281 (MKV), 2022 WL 889213, at *4 (S.D.N.Y. Mar. 25, 2022) (courts "may also consider factual statements made in the *pro se* Plaintiff's opposition to the motion to dismiss") (citing *Walker*, 717 F.3d at 122 n.1). Nevertheless, *pro se* plaintiffs are not excused from the normal rules of pleading; "dismissal ... is proper if the complaint lacks an allegation regarding an element necessary to obtain relief." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (cleaned up).

**IV. ANALYSIS**

Defendants argue that all of Cruz's claims should be dismissed. First, they contend that the state law claims litigated in the SDHR (which include claims based on the COVID Accommodation Allegations and at least some of the Post-Return Harassment Allegations) should be dismissed under Rule 12(b)(1) because Cruz's election to pursue these state law claims in the SDHR deprives this Court of subject matter jurisdiction. Def. Mem. at 15–16. Second, they contend that federal law and local law claims based on these same allegations are both untimely and barred by collateral estoppel. *Id.* at 14–15, 101 S.Ct. 173. Third, Defendants argue that Cruz is collaterally estopped from bringing claims based on her 2023 Termination Allegations because they were decided in a binding arbitration. *Id.* at 18, 101 S.Ct. 173.

Defendants also argue that Cruz has failed to adequately plead her causes of action on the merits. *Id.* at 18–23, 101 S.Ct. 173. Finally, Defendants contend that because there is no individual liability under the ADA or Title VII, those claims against the individual defendants should be dismissed, and because New York's Penal Law does not provide a private right of action, the aggravated harassment cause of action should be dismissed. *Id.* at 24–25, 101 S.Ct. 173. The Court will address these arguments in turn.

**A. Timeliness and Exhaustion of Federal Claims Based on The COVID Accommodation Allegations**

"[A] plaintiff seeking to bring a claim pursuant to the Americans with Disabilities Act ("ADA") [or] Title VII ... must exhaust administrative remedies through the EEOC or [the state administrative agency]." *Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018). To exhaust their administrative remedies, a plaintiff "must file a charge of discrimination with the EEOC 'within three hundred days after the alleged unlawful employment practice occurred,' 42 U.S.C. § 2000e-5(e)(1), and must then file an action in federal court within 90 days of receiving a right-to-sue letter from the agency, *id.* § 2000e-5(f)(1). *Duplan v. City of New York*, 888 F.3d 612, 621–22 (2d Cir. 2018).

***6** Cruz was placed on leave without pay on December 29, 2021, effective December 30, due to her failure to comply with the MTA's masking requirement. Compl. at 11. The MTA formally denied her request for an accommodation on January 19, 2022. Dkt. No. 34-2 at 4. However, Cruz claims that this denial was not transmitted to her until April 26, 2022. Compl. at 12. Defendants argue that because Cruz filed her SDHR complaint more than 300 days after either of those dates, her Title VII and ADA claims should be dismissed as untimely under Rule 12(b)(6). Def. Mem. at 14–15.

In response, Cruz writes that she first mailed her complaint to the EEOC in June of 2022. She claims that later that month she attempted to file with the EEOC in person, but was unsuccessful because the EEOC offices were closed to walk-ins due to the pandemic. Pl. Opp. at 4. Cruz has provided what appear to be contemporaneous screenshots of the EEOC's

website showing that no appointments were available from July through December of 2022. *Id.* at 87–92. She does not offer an explanation for her delay in filing with the SDHR, which allows for dual-filing with the EEOC.

Ultimately, the Court need not reach the issue of timeliness because Cruz's federal claims based on the COVID Accommodation Allegations made in the SDHR should be dismissed on other grounds.

**B. The Court Lacks Subject Matter Jurisdiction Over Cruz's State Law Claims Based Upon Allegations Made in the SDHR Complaint**

An individual alleging violations of the NYSHRL may either file suit in court or bring the claims before a local commission on human rights. N.Y. Exec. Law § 297(9). After an unfavorable decision from the state administrative agency, a plaintiff can only appeal from that decision in state court. *Id.* at 127 ("Furthermore, once a plaintiff brings a case before the NYSDHR, he or she may appeal only to the Supreme Court of State of New York.") (citing N.Y. Exec. Law § 298). The Second Circuit has ruled that if a plaintiff files a claim with the New York State Division of Human Rights, federal courts lack subject matter jurisdiction over those claims. *Desardouin v. City of Rochester*, 708 F.3d 102, 106 (2d Cir. 2013) (upholding district court's dismissal of case for lack of subject matter jurisdiction where plaintiff brought identical claims in SDHR).

In her SDHR complaint, which asserted violations of the NYSHRL, Cruz alleged that the MTA and its employees, Flowers and Forrester, Defendants in this lawsuit as well, discriminated against her based upon her religion and disability. SDHR Compl. at 12–14. Thus, Cruz pursued claims based on her COVID Accommodation Allegations in the SDHR. Additionally, the SDHR complaint asserted state law claims based upon certain incidents that are part of the Post-Return Harassment Allegations. *Id.* at 18–19, 101 S.Ct. 173.

Cruz's Complaint filed here relies on these same COVID Accommodation Allegations made in the SDHR. *Compare* Compl. at 11–13 *with* SDHR Complaint at 18–19. In both complaints, Cruz alleges that she was discriminated against because the MTA did not provide accommodations for her religious beliefs and disability, and by placing her on unpaid leave. *Id.* Cruz's Complaint also makes the same Post-Return Harassment Allegations that were made in the SDHR, particularly those occurring in 2022. *Compare* Compl. at 13-14 *with* SDHR Complaint at 19. The SDHR ruled against Cruz on these claims. Defendants contend that Cruz failed to appeal from the SDHR Determination in state court and Cruz never rebuts this assertion. Def. Mem. at 22.

Accordingly, this Court lacks subject matter jurisdiction over the state law claims that Cruz pursued in the SDHR because she elected to bring those claims in a state administrative agency and did not appeal from its decision. This means that state law claims based on the COVID Accommodation Allegations and those Post-Return Harassment Allegations made in the SDHR should be dismissed under Rule 12(b)(1). *See Desardouin,* 708 F.3d at 106.

**C. Federal Law and Local Law Claims Based on the Facts Alleged in the SDHR Complaint Should Be Dismissed Under the Doctrine of Collateral Estoppel**

***7** "Even though a plaintiff's factual allegations must be accepted as true and all reasonable inferences drawn in the plaintiff's favor on a motion to dismiss [pursuant to Rule 12(b)(6)], collateral estoppel will nonetheless bar a plaintiff's claim when the plaintiff's 'factual allegations have been decided otherwise in previous litigation.' " *Poindexter v. Cash Money Records*, No. 13-CV-1155 (RWS), 2014 WL 818955, *3 (S.D.N.Y. Mar. 3, 2014) (quoting *Jacobs v. Law Offices of Leonard N. Flamm*, No. 4-CV-7607, 2005 WL 1844642 (DC)), at *3 (S.D.N.Y. July 29, 2005). While courts "apply federal law in determining the preclusive effect of a federal judgment and New York law in determining the preclusive effect of a New York state court judgment, ... there is no discernible difference between federal and New York law concerning ... collateral estoppel." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). "Under New York law, a claim will be barred by a determination in an earlier action if both causes of action are grounded on the same gravamen or are part of the same 'factual grouping,' even if the later claim is brought under a different legal theory of recovery." *Kirkland v. City of Peekskill*, 828 F.2d 104, 110 (2d Cir. 1987).

Under New York law, " '*res judicata* and collateral estoppel are applicable to give conclusive effect to the quasi-judicial determinations of administrative agencies ... when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law....' " *DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 117 (2d Cir. 1987) (quoting *Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 499, 478 N.Y.S.2d 823, 467 N.E.2d 487

(1984)), *cert. denied*, 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987).

In her SDHR Complaint, Cruz only asserted claims under the NYSHRL. In the present action, she brings claims grounded in the ADA, Title VII, and NYCHRL that are based on the same factual allegations presented in the SDHR proceeding. More specifically, both the SDHR complaint and the instant Complaint assert Cruz's COVID Accommodation Allegations. *See* Compl. at 9 ("[Defendants] did not accommodate my reasonable religious accommodate [SIC]. Put on unpaid leave."); SDHR Compl. at 15 (under "Acts of Discrimination" section, checking box for "Denied me an accommodation for my religious practices" and writing next to "Other" box writing "Unpaid leave for six months."). Both complaints challenge the MTA's decision not to provide Cruz an accommodation for her religious beliefs and disability, and its decision to place her on unpaid administrative leave when she refused to adhere to its masking and test or vaccine policies. Compl. at 11–12; SDHR Complaint at 18–19.

Additionally, Cruz asserts claims in this action that are based on the same Post-Return Harassment Allegations that were advanced in the SDHR Complaint. Most notably, both complaints refer to an August 16, 2022 incident in which Kornagay allegedly tried to force Cruz to violate MTA policies and a November 15, 2022 incident in which Defendants allegedly interfered with Cruz filing a police complaint. *See* Compl. at 13-14; SDHR Complaint at 19. [5]

Because Cruz previously litigated these same COVID Accommodation Allegations and Post-Return Harassment Allegations in the SDHR, the SDHR rejected her claims based on these allegations, and she did not appeal from this decision in state court, Cruz's ADA, Title VII, and NYCHRL claims that are based on the COVID Accommodation Allegations and the Post-Return Harassment Allegations made in the SDHR complaint should be dismissed under Rule 12(b)(6).

### D. Cruz Has Not Exhausted Her Administrative Remedies with Regard to Federal Claims Premised on Allegations Not Presented to the SDHR

***8** As a matter of logic, Cruz's claims fall into two, mutually exclusive categories: (1) claims based on allegations made to the SDHR, and (2) claims based on allegations that were *not* made to the SDHR. As explained above, the claims falling in the first category should be dismissed either for lack of subject matter jurisdiction (Cruz's state law claims) or collateral estoppel (Cruz's federal and local law claims). This leaves the second category – claims based on allegations that were not made in the SDHR. To the extent they fall within this second category and are premised on factual allegations that were not presented to the SDHR, Cruz's federal claims for violation of the ADA and Title VII should be dismissed for failure to exhaust administrative remedies.

Cruz asserts claims in this action that are grounded in allegations that were not made in her December 2022 SDHR Complaint. These include allegations of certain hostile and harassing interactions that occurred after she returned to work at the 8th Street station on July 8, 2022, *i.e.*, a portion of the Post-Return Harassment Allegations (particularly those occurring in 2023) as well as the 2023 Termination Allegations.

Cruz states that she attempted to amend her SDHR Complaint to include these additional allegations, but the SDHR ruled against her before she could do so. Pl. Opp. at 5. She also filed a second dual charge/complaint with the SDHR and the EEOC in January of 2024, which was *after* the litigation Complaint was filed. *Id.* She does not claim to have received a final determination from the SDHR or a right-to-sue letter from the EEOC in relation to this second complaint. Cruz has therefore has not exhausted her administrative remedies with regard to the alleged discriminatory actions that were not mentioned in the SDHR complaint, and the federal claims that require exhaustion–*i.e.*, her ADA and Title VII claims–should be dismissed without prejudice. *See, e.g.*, *Soules v. Connecticut,* 882 F.3d 52, 57 (2d Cir. 2018).

In her opposition papers, Cruz claims that defendants Kornagay and Felice acted in retaliation. Pl. Opp. at 3–4. Cruz presumably makes this assertion so she can argue that these later incidents relate back to the earlier incidents, for which she did utilize administrative remedies. *See Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (Claims not raised in an EEOC [or EEO] complaint ... may be brought in federal court if they are 'reasonably related' to the claim filed with the agency.") (citing *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397, 1401 (2d Cir. 1993)).

However, Cruz has not plausibly alleged that the clashes with her supervisors in the second half of 2022 and in 2023 that were not presented to the SDHR were in any way related to her earlier request for an accommodation. At the outset, it is worth noting that the SDHR specifically addressed two

incidents involving Kornagay, including an August 2022 run-in over lost property documents and a November 15, 2022 confrontation in the station booth. After considering these allegations, the SDHR observed that Cruz had complained that her supervisors were "harassing" her even before the pandemic, and concluded, "the investigation did not reveal any evidence that these supervisory actions were in any way related to Complainant's religion, disability, or any protected category under the law. Complainant has failed to establish any connection between her protected characteristics and any of her allegations, and has only provided speculative and conclusory statements." SDHR Determination at 4.

In her opposition, Cruz provided a copy of the letter she sent to the Office of Equal Employment Opportunity complaining about these and other events in late 2022 and 2023. Pl. Opp. at 69–73. But this summary of the actions taken by Kornagay and Felice does not plausibly allege retaliation. Cruz's primary basis for alleging retaliation is that Kornagay asked Cruz in July 22 whether she had worked at the Wall Street station. Pl. Opp. at 69. But there is no assertion that Kornagay or Felice ever mentioned Cruz's prior request for accommodation, her religious beliefs, or her disability. Nor are there factual allegations that would support a reasonable inference that Cruz's supervisors knew about her accommodation request. *Id.*

***9** As reported by Cruz, these incidents generally involved either Cruz's attire or perceived invasions of her personal space in her booth at the 8th Street Station. *Id.* The key incident that led to Cruz's refusal to return to her worksite in June 2023 was instigated by a cleaning crew supervisor who did not even know Cruz's name. Pl. Opp. at 71; Arb. Opinion at 3–4. At most, Cruz alleges that Kornagay "made references" to her "previous work location" in July 2022, but this vague assertion fails to demonstrate the required connection between the *protected activity* – a request for an accommodation – and her disputes with her new supervisors. Compl. at 13. It is particularly unavailing given the SDHR's unappealed determination that Kornagay's actions in August and November 2022 – *after* her July 2022 reference to Cruz's prior work at the Wall Street station – were not retaliatory. Cruz provides no plausible basis to infer that Kornagay developed a retaliatory motive at some point after these events that the SDHR already considered and determined were not retaliatory. Finally, Cruz does not claim that the other MTA employee who allegedly harassed her, defendant Deborah Felice, ever even mentioned Cruz's work at the Wall Street station.

Ultimately, Cruz fails plausibly to allege that the disputes with her new supervisors at the 8th Street station were in retaliation for her earlier request for accommodation. Because she has not exhausted her administrative remedies regarding the events not included in her first SDHR complaint, and these events are not related to her prior dual SDHR/EEOC filing, these federal claims should be dismissed without prejudice.

### E. Cruz is Collaterally Estopped from Bringing Claims Based On Her 2023 Termination Allegations

The doctrine of collateral estoppel precludes subsequent litigation if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Moccio v NY State Off. of Ct. Admin.*, 95 F.3d 195, 200 (2d Cir 1996). "Under New York law as it has evolved, collateral estoppel may also be applied, assuming there has been a final determination on the merits, to an issue resolved in arbitration." *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003).

The MTA's decision to terminate Cruz was adjudicated before an independent arbitrator on October 8, 2023. Arb. Opinion at 1. The specific incident discussed – an interaction with defendant Deborah Felice on June 9, 2023, after which Cruz did not report to her workplace – is described in the present Complaint as an act of retaliatory harassment. *Id.* at 1; Compl. at 16. At the arbitration, counsel retained by the Transit Workers' Union was available to represent Cruz, but she elected to represent herself. Arb. Opinion at 2.

At the hearing, Cruz made the very same claim that she alleges here: Felice's actions and the resulting disciplinary process were in retaliation for Cruz's complaints to the state regulatory bodies. Arb. Opinion at 10; Pl. Opp. at 77–78 (plaintiff's closing statement at the arbitration). The arbitrator rejected this contention, determining, "I do not find that there is any basis to conclude that Felice's actions were retaliatory. I credit Felice's testimony that she did not recall any prior interactions with Cruz and there is no evidence to demonstrate that she was aware that Cruz had filed anything which would be protected by statute from retaliatory conduct." Arb. Opinion at 10.

Because Cruz litigated claims based on her present 2023 Termination Allegations in the arbitration (*i.e.*, that the June 9, 2023, incident and her subsequent termination were retaliatory), and the independent arbitrator rejected these

claims, Cruz is collaterally estopped from bringing claims based on the 2023 Termination Allegations in this action. These claims should therefore be dismissed under Rule 12(b)(6).

**F. The Court Should Decline to Exercise Supplement Jurisdiction Over Cruz's Remaining Claims Under State and Local Law Based on Post-Return Harassment Allegations That Were Not Presented in the SDHR**

As discussed in Part C and Part D above, all of Cruz's federal claims should be dismissed. As discussed in Part E above, all claims (federal, state and local) arising from the 2023 Termination Allegations should be dismissed. As discussed in Part B and Part C above, all claims (federal, state and local) based on allegations presented to the SDHR (*i.e.*, claims based on the COVID Accommodation Allegations and a portion of the Post-Return Harassment Allegations) should be dismissed. The only claims remaining are the NYSHRL and NYCHRL claims that are based on those Post-Return Harassment Allegations that were *not* presented to the SDHR. However, a district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

***10** "Courts in this District routinely decline to exercise supplemental jurisdiction over a plaintiff's NYCHRL claims after dismissing all federal claims." *Espinoza v. New York City Dep't of Transportation*, 304 F. Supp. 3d 374, 391 (S.D.N.Y. 2018); *see also Harris v. NYU Langone Med. Ctr.*, No. 12-CV-0454(RA), 2014 WL 941821, at *1–2 (S.D.N.Y. Mar. 11, 2014) (declining to exercise jurisdiction over NYSHRL and NYCHRL claims); *Algarin v. City of New York*, No. 12-CV-1264 (LTS), 2012 WL 4814988, at *4 (S.D.N.Y. Oct. 10, 2012) (declining to exercise jurisdiction over New York State Executive Law § 296 and NYCHRL claims); *Mabry v. Neighborhood Def. Serv.*, 769 F. Supp. 2d 381, 402 (S.D.N.Y. 2011) (declining to exercise jurisdiction over NYSHRL and NYCHRL claims).

Accordingly, the Court should decline to exercise supplemental jurisdiction over Cruz's remaining NYSHRL and NYCHRL, which are those arising from Post-Return Harassment Allegation that were not put forward in the SDHR proceeding.

**G. The ADA and Title VII Do Not Provide For Individual Liability**

Plaintiff has sued seven MTA employees in their individual capacities. However, unlike NYSHRL and NYCHRL, the ADA and Title VII do not provide for individual liability. *See Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 641 Fed. Appx. 60, 61-62 (2d Cir. 2016) ("Title VII does not provide for individual liability." (first citing *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014); and then citing *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (per curiam))); *Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 2016 WL 3212108, at *7 (S.D.N.Y. 2016) ("[T]here is no individual liability under the ADA." (citing *Lane v. Maryhaven Ctr. of Hope*, 944 F. Supp. 158, 162 (E.D.N.Y. 1996))). Even if the Court determines that Cruz's ADA and Title VII are not otherwise barred, they should be dismissed with regard to the individual Defendants.

**H. There Is No Private Right of Action for the Alleged Criminal Offense**

Cruz asserts a claim for "Aggravated harassment" under § 240.30. While not explicitly stated, the Court infers that Cruz means § 240.30 of the New York Penal Law, which covers aggravated harassment in the second degree. N.Y. Penal Law § 240.30. There is no private right of action for violation of these criminal statutes. *See, e.g.*, *Johnson v. Allick*, 2019 WL 569106, at *5 (E.D.N.Y. Feb. 12, 2019) ("As a general matter ... crimes are prosecuted by the government, not by private parties."). Accordingly, this claim should be dismissed.

**I. Defendants' Arguments on the Merits**

Because all of Cruz's claims should be dismissed on other grounds, the Court need not reach Defendants' arguments on the merits of her claims. However, these arguments are briefly addressed below.

Defendants argue that Cruz's religious discrimination claims should be dismissed because her Complaint fails to provide detail concerning her religious beliefs. Def. Mem. at 21. Defendants are correct in this assessment of the pleading; however, Cruz does provide additional details about her religious beliefs in her various administrative filings. *See, e.g.*, Pl. Opp. at 15. Accordingly, the proper remedy for Cruz's insufficient pleading would be granting her leave to amend her Complaint, not dismissal.

Defendants make a similar argument regarding Cruz's disability claims, contending that she has not sufficiently described her disability or that she requested an accommodation from the MTA. Def. Mem. at 21–23. While her Complaint fails to make these necessary allegations, once again there is sufficient information about her disability and her communications with the MTA concerning her disability such that the proper remedy would be an amended pleading.

***11** Finally, Defendants argue that Cruz's claims should be dismissed because Second Circuit case law has unequivocally provided that "granting a reasonable accommodation to an employee seeking to be exempt from mask, testing or vaccination requirements would have posed an undue hardship to the employer." Def. Mem. at 18–20. Defendants cite *D'Cunha v. Northwell Health Sys.*, 2023 WL 7986441, 2023 U.S. App. LEXIS 30612 (2d Cir. Nov. 17, 2023), where the Second Circuit upheld the 12(b)(6) dismissal of a religious discrimination claim based on the denial of the request to be exempt from a vaccine mandate as support for their position that Cruz's religious discrimination claim fails to meet the 12(b)(6) bar. Def. Mem. at 18–19; *see also Cagle v Weill Cornell Medicine,* 680 F. Supp. 3d 428 (S.D.N.Y. 2023) (granting unopposed 12(b)(6) motion in case where healthcare worker who was denied accommodation from vaccine mandate brought Title VII and ADA claims). However, *D'Cunha* involved only a vaccine mandate, not a mask policy. *D'Cunha*, 2023 WL 7986441, 2023 U.S. App. LEXIS 30612 at *5–6. As Defendants do not cite any case where a 12(b)(6) motion was granted based on a denial of accommodation from a masking requirement, Cruz's discrimination claims should not be dismissed on such grounds as a matter of law.

**V. CONCLUSION**

Cruz brings a variety claims. Ultimately, each of them should be dismissed for one or more reasons. In summary:

- Cruz's New York State Human Rights Law claims arising from the denial of her request for a reasonable accommodation and arising from the alleged harassment that took place once she returned to work that she alleged in the SDHR should be dismissed with prejudice because Cruz elected to bring these claims before the SDHR, which deprives this Court of subject matter jurisdiction.

- Cruz's ADA, Title VII, and New York City Human Rights Law claims arising from the denial of her request for a reasonable accommodation and arising from the alleged harassment that took place once she returned to work that she alleged in the SDHR should be dismissed with prejudice based upon the doctrine of collateral estoppel; she presented these same factual allegations to the SDHR, the SDHR ruled against her, and she did not appeal.

- Cruz's ADA and Title VII claims arising from the alleged harassment that took place once she returned to work that she did not allege in the SDHR, and her subsequent termination after she stopped going to her worksite, should be dismissed without prejudice because Cruz has not exhausted her administrative remedies prior to filing in federal court.

- Cruz's ADA, Title VII, NYSHRL, and NYCHRL claims arising from the harassment allegedly committed by defendant Felice on June 9, 2023 and the termination of her employment are barred by the doctrine of collateral estoppel and should be dismissed with prejudice because these same factual allegations were decided in a binding arbitration.

- The Court should decline to exercise supplemental jurisdiction over the state and local law claims that should not otherwise be dismissed for the reasons described above, *i.e.*, Cruz's NYSHRL and NYCHRL claims arising from the alleged harassment she experienced after returning to work that she did not allege in the SDHR.

- Cruz's ADA and Title VII claims against the individual Defendants should be dismissed with prejudice because there is no individual liability under those statutes.

- Cruz's claim for aggravated harassment under New York Penal Law § 240.30 should be dismissed with prejudice as there is no private right of action under this criminal statute.

The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to the plaintiff.

**PROCEDURE FOR FILING OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections.

*See* Fed. R. Civ. P. 6(a), (b), (d). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Analisa Torres, United States Courthouse, 500 Pearl St., New York, New York 10007-1312. Any requests for an extension of time for filing objections must be directed to Judge Torres.

***12 FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

**All Citations**

Not Reported in Fed. Supp., 2025 WL 209598

## Footnotes

1 The Court may take judicial notice of matters of public record, such as New York State executive orders. *See, e.g.,* See *Elite Union Installations, LLC v. Nat'l Fire Ins. Co.,* 559 F. Supp. 3d 211, 219 (S.D.N.Y. 2021); *Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 173 (S.D.N.Y. 2020).

2 Although Cruz did not attach the complete record of her SDHR proceeding to her complaint, the Court can take judicial notice of the records of a state administrative proceeding without converting the motion to dismiss into a motion for summary judgment. *See, e.g.*, *Evans v. New York Botanical Garden*, No. 02-CV-591 (RWS), 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002).

3 Although the Complaint states that Cruz returned to work on July 11, 2023, adjacent segments of the Complaint and other documents indicate this is a typographical error.

4 Cruz did not include a copy of the arbitration opinion in her Complaint. However, she referenced the arbitration in the Complaint and included a copy of her closing statement at the arbitration in her opposition to the present motion. Compl. at 16; Pl. Opp. at 77–78, Dkt. No. 43. Defendants filed the arbitration opinion with their opposition papers. Dkt. No. 34-5. Because the arbitration is referenced by plaintiff in both her complaint and her opposition, its authenticity is not in dispute, and it is a publicly available document, the Court will take judicial notice of the arbitration opinion without converting the motion to dismiss into a motion for summary judgment. *See* *Brown v. New York City Transit Auth.*, No. 22-CV-02949 (ALC), 2024 WL 1347283, at *5–6 (S.D.N.Y. Mar. 29, 2024).

5 To the extent the Complaint in this action includes Post-Return Harassment Allegations that were not made in the SDHR Complaint (*e.g.*, allegations concerning events in 2023), federal claims based on those allegations should be dismissed for failure to exhaust administrative remedies, as explained in Section IV.D below.

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 1831673
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Abrahim FATA, Plaintiff,
v.
Edwin ARCELLY, et al., Defendants.

CIVIL ACTION NO. 26-2185
|
Filed June 25, 2026

**Attorneys and Law Firms**

Abrahim Fata, Bethlehem, PA, Pro Se.

**MEMORANDUM**

HENRY, J.

***1** Plaintiff Abrahim Fata commenced this *pro se* civil action against numerous Defendants, asserting that this case primarily arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); the Civil Rights Act of 1871, 42 U.S.C. § 1985(3); and the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595. (*See* ECF No. 2 ("Compl.") at 1.) Fata also filed a motion for leave to proceed *in forma pauperis.* For the following reasons, the Court will grant Fata leave to proceed *in forma pauperis* and dismiss his Complaint.

## I. FACTUAL ALLEGATIONS [1]

Fata's assertions initially relate to the formulation of home plans while he was still in custody, and he alleges that the actions of several defendants "obstruct[ed] the legal 'home plan' process," causing him to remain improperly in custody rather than released on parole prior to the end of his maximum custodial sentence. (*See generally* Compl. at 2-6.) Following his release, Fata alleges that several other defendants denied him "legal protection" and either impeded his entry into residential programs or evicted him from programs for arbitrary reasons. (*Id.*) Fata claims that all his difficulties in obtaining home plans and securing post release housing are tied to a conspiracy that is "orchestrated to keep [him] in a crisis," and "block the federal courts from hearing [his] case." (*Id.* at 17.)

Fata is a frequent litigator in this Court. As in his prior cases, Fata continues to allege the existence of a conspiracy that began in 2017 "to coverup a sexual abuse on [his] two kids and to frame [him]" (hereinafter referred to as the "2017 conspiracy"). (*Id.* at 18.) He contends that he's "been severely oppressed by Pennsylvania, and New Jersey societies/communities, and governments, since 2017 ... to the extreme of [his] death, by either manipulating a fatal 'accident' or ... to push [him] to suicide." (*Id.*) Fata claims that the conspiracy "started with a Christian religious-based organization, that has invaded the communities" where he and his children reside, and he further alleges that this organization has recruited many relatives and government officials to form an enterprise to "oppress [him] religiously, psychologically, [and] systematically." [2] (*Id.*)

***2** In his current Complaint, Fata names as Defendants several staff members of Lehigh County Jail ("LCJ") including Edwin Arcelly (identified in the Complaint as a case worker); Bob Krasley (identified as a case worker); Tracy Kester (identified as a substitute case worker); Doug Matte and Jim Kremers (identified as "treatment team" members); and Kyle A. Russell (identified as the Warden). (*Id.* at 2.) He also names as Defendants Lehigh County "legal/administrative officials" Marsha Evans (identified as "probation/parole"); District Attorney Jay Jenkins; "Jessica" from "SPORE" [3] and Allentown Police "Detectives" John Lenord, Elizabeth Flores, and "Manning." (*Id.* at 2-3.) Fata also names as Defendants four staff members from the Allentown Rescue Mission ("ARM"), identifying them by first name only—Jose ("Intake Manager"), Heather, Sesa, and Paul. (*Id.* at 3.) Finally, he names several "private/institutional staff" members as Defendants including Jess (identified as the Director for the Allentown YMCA); Tiffany (identified as the Supervisor for Bethlehem YMCA); Hanna (identified as the supervisor for Bethlehem Shelter); Mr. Valentine (Victory House); Mr. Meyers (Stephen's House); and James Goss (identified "as a 'lead' and member of the enterprise" who "appear[ed] at the Allentown Rescue Mission chapel to manipulate [Fata]"). (*Id.*)

Public dockets reflect that Fata was incarcerated at LCJ in connection with probation revocation proceedings. *See Commonwealth v. Fata*, No. CP-39-CR-0004857-2017 (C.P. Lehigh). On January 16, 2024, Fata's probation was revoked, and he was sentenced to nine to twenty-three months imprisonment. *Id.* Fata claims that he was eligible for early release on July 25, 2024. (Compl. at 6.) In May 2024, Arcelly provided Fata with some home plan options and told him to

"file for early release." (*Id.*) Fata filed a motion for parole, and a hearing was scheduled for July 11, 2024 before Lehigh County Court of Common Pleas Judge Thomas M. Caffrey. (*Id.* at 6-7.) At the hearing, Fata asked Judge Caffrey if he could be released to ARM, but District Attorney Jenkins allegedly responded that it "wasn't a good idea." (*Id.* at 7.) Fata alleges that Evans and Jenkins "blocked his release path" when Evans asserted that shelters were not an option for home plans[4] and when Jenkins made a statement on the record. (*Id.* at 2, 19.) Fata's request for parole was denied. (*Id.* at 7.) Fata further claims that Jessica from SPORE falsely claimed that he had a "mental issue" to justify his exclusion from orientation programs. (*Id.* at 2, 19.)

Fata claims that after he "return[ed] from court," Arcelly ignored him for a week and refused to provide him "with the list of other [home] options." (*Id.* at 2, 7-8.) He contends that Arcelly sabotaged his release by "withholding home plan lists" and by obstructing his "ability to communicate with his bank" to arrange for rental payments. (*Id.* at 2, 19.) Fata claims that Kester, who substituted for Arcelly while he was away on vacation, "oppressed [him]" by providing false information and by failing to give him a list of home plan options. (*Id.* at 2, 7.) Fata avers that Matte and Kremers, who supervised the case workers, ignored him and "provided misinformation to subsequent staff ... to perpetuate [his] 'crisis.' " (*Id.*) Fata alleges that between July and September 2024, "[he] wrote grievances" regarding the failed attempts to contact his bank and retrieve home plans. (*Id.* at 8.) All his grievances were "denied or rejected wrongfully" by Warden Russell, and Russell dismissed "all grievances regarding the enterprise's interference." (*Id.* at 2, 8, 19.) In December 2024, Krasley began "to oppress [Fata] by sending indirect messages" about home plan options. (*Id.* at 9-10.) Fata claims that Krasley blocked his release by, *inter alia*, "claiming ignorance of available agencies while providing them to other inmates," seizing his resources list, and utilizing punitive lockdown. (*Id.* at 2, 19.) Fata claims that by March 2025, he stopped researching home plan options because he was about to "max out." (*Id.* at 10.) Fata was released from LCJ on September 25, 2025, the end date of his custodial sentence. (*Id.*)

***3** Following his release from jail, Fata walked to ARM but was denied admittance by Jose because of a "fraudulent background check." (*Id.* at 3, 10, 19.) Jose also questioned Fata's "mental health to impede entry." (*Id.* at 3.) Fata went to the Allentown Police Department ("APD") to clear up his background history, and after explaining to Jose that a prior assault charge was dismissed, Fata was permitted entry to ARM. (*Id.* at 10-11.) Fata alleges that ARM staff members didn't like him, and he was "falsely accused" of harassment as a "pretext for program exclusion." (*Id.* at 3.) He claims that other staff members verbally insulted him, and "started singling [him] out and oppressing [him] for eating late" or "for getting more than one cup of water." (*Id.* at 3, 12.) While residing at ARM, Fata filed several incident reports with the APD. (*Id.* at 11.) He avers that he "was oppressed by the officers" who "question[ed] [his] mental health." (*Id.* at 11.) Fata alleges that he filed a report because "information was deleted from [his] phone" and later filed another report because an ARM volunteer, James Goss, tried to befriend Fata even though that individual "and his daughter started a conspiracy against [Fata] with a church back in 2017." (*Id.*) Fata avers that Goss acted as a "direct liaison between the 2017 conspiracy and current events." (*Id.* at 19.) Fata claims that the incident reports he made regarding Goss and others were disregarded by Detectives Lenord, Flores, and Manning, averring that they "ignored physical evidence of organized crime to protect the enterprise."[5] (*Id.* at 11, 19.) On November 17, 2024, Fata was "kicked out" of ARM, allegedly "for no legit reason" and he was banned for a year. (*Id.* at 12-13.)

Fata then went to the Allentown YMCA and met Jess, the YMCA Director. (*Id.* at 12.) Upon arrival, Fata told Jess that he "was a victim of organized crime and there was a conspiracy against [him]." (*Id.* at 12-13.) He got along initially with everyone at the YMCA until a "staff member conspired with Jess to oppress [Fata], and Jess started insulting [him]." (*Id.* at 3, 13, 19.) Fata alleges that Jess continually insulted him and prevented him from showering, until he "was kicked out on November 30th." (*Id.*) On December 1, 2025, Fata went to the APD and made another incident report because information was missing from his phone. (*Id.* at 13.)

Fata next went to the Bethlehem Emergency Shelter and advised the staff, including the shelter's supervisor, Hanna, about the "conspiracy" against him. (*Id.*) At some point during his stay, Hanna told Fata that there were multiple complaints about him from other residents. (*Id.* at 14-15.) Fata claims that a resident named Dave "never stopped provoking" him. (*Id.* at 15.) After his conversation with Hanna, he allegedly found a bible in the area where he usually did his "legal work," and he claims that the placement of the bible was "orchestrated specifically for [him]" in connection with the 2017 conspiracy formed against him. (*Id.* at 15,

18.) Fata received several warnings [6] during his stay at the Bethlehem Emergency Shelter and was suspended from the shelter on February 11, 2026. (*Id.* at 15.) He asked Hanna to provide the names of staff members who "singled [him] out" because he "needed it for [his] case." (*Id.* at 3, 15-16.) Hanna did not respond to him until February 23, 2026, and because of the "abnormally prolonged response" and refusal "to identify provocateurs," Fata "knew" that "Hanna was part of the conspiracy against [him]." (*Id.* at 3, 16.) On March 16, 2026, Fata told Hanna that he was "being targeted" and that the rules were being used "as a weapon" against him. (*Id.* at 3, 17, 19.) Fata also told Hanna that people at the shelter were hacking his phone, and he planned to set up "boobie traps" to find out who was in on the conspiracy. (*Id.* at 17.) Hanna told him that he had to leave the shelter that night because he would not follow the rules. (*Id.*) When Hanna suggested the Allentown YMCA, he responded that he would not go there because "they're in on this conspiracy." (*Id.*) Fata avers that all Defendants are aware of the 2017 conspiracy, and they "agreed to a 'meeting of the minds' to utilize their official and private capacities to block [his] release and housing stability." (*Id.* at 20.)

***4** Based on the foregoing allegations, Fata asserts six claims for relief. (*Id.* at 3-5.) The first three claims allege violations of federal criminal statutes. His first claim, "Federal Trafficking and Hostage-Taking," asserts that Defendants "utilized the legal 'home plan' requirement" to "perpetuate [his] detention through coordinated sabotage" in violation of federal criminal statutes that prohibit hostage taking (18 U.S.C. § 1203), forced labor (18 U.S.C. § 1589), and human trafficking (18 U.S.C. § 1595). (*Id.* at 3-4.) He also contends that Defendants Jose, Jess, and Hanna "maintained control via a 'crisis loop' of coordinated evictions" to prevent him from advancing his legal claims and to keep law enforcement from investigating the 2017 conspiracy. (*Id.* at 4, 17.) Fata's second claim, "Federal Stalking and Psychological Coercion," alleges that Defendants used "gaslighting and the creation of 'boobie traps' " to place him under substantial emotional distress in violation of the federal criminal statute that prohibits stalking (18 U.S.C. § 2261A). (*Id.* at 4.) He claims that the orchestration of insults by Defendant Jess and certain residents "were tactical weapons" used to impede his "legal standing." (*Id.*) His third claim, "Tampering with Victims and Witnesses," alleges that even though the Defendants were aware of Fata's statements regarding the 2017 conspiracy, they "engaged in misleading conduct—including 'filibustering' and misrepresentation of criminal history—to hinder reporting federal offenses" in violation of the federal statute that criminalizes witness tampering (18 U.S.C. § 1512). (*Id.*)

Fata's fourth claim asserts a civil rights conspiracy in violation of 42 U.S.C. § 1985(3). (*Id.*) He contends that "[t]he conspiracy was motivated by class-based (religious) animus," alleging that the "acceptance of an inmate with identical religious views" into a home plan that Fata was denied acceptance into is evidence of a conspiracy. (*Id.*) Fata further alleges that an email from "Jessica (S.P.O.R.E.) to [ARM] establishes the 'nexus' for state-private liability." (*Id.*) The fifth claim asserts cruel and unusual punishment in violation of the Eighth Amendment, allegedly because Fata was moved to " 'the hole' (3C) on September 27, 2024, without penological justification." (*Id.*) He also alleges deliberate indifference because the Defendants "knowingly exacerbat[ed] sleep deprivation—which required a Seroquel prescription—through institutional sabotage." (*Id.*) Finally, in the sixth claim, Fata alleges Fourteenth Amendment due process and equal protection violations. (*Id.* at 4-5.) He avers that Defendants arbitrarily denied and obstructed "the legal 'home plan' process" and failed to "provide meaningful administrative review." (*Id.*) He also avers that Arcelly and Evans treated him "differently than other similarly situated inmates by claiming facilities were not approved home plans while releasing others to those same facilities." (*Id.* at 5.)

Fata claims that because of a "pattern of racketeering," he suffered financial losses including "lost wages from Auto Zone, the depletion of PNC bank funds, and increased transportation costs" because he was "forcibly moved further from his place of employment." (*Id.* at 5, 19-20.) He seeks monetary, punitive, and treble damages in an unspecified amount, and seeks "a permanent injunction against the Defendants to cease all psychological and systemic oppression." (*Id.* at 5.) He also requests that the Court "refer the evidence of criminal violations identified" for criminal prosecution by the United States and/or Pennsylvania Attorney General. (*Id.*)

## II. STANDARD OF REVIEW

The Court will grant Fata leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to screen and dismiss the Complaint if it is frivolous, malicious, fails to state a claim, or seeks relief from an immune defendant. Section 1915(e)(2)(B)(i) requires the Court to dismiss Complaint if it is frivolous, and § 1915(e)(2)(B)(ii) requires dismissal if a complaint fails to

state a claim upon which relief may be granted. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Brown v. City of Philadelphia*, 750 F. App'x 171, 173 (3d Cir. 2018) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). The use of the term "frivolous" in § 1915 "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke*, 490 U.S. at 325. Section 1915 accords judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless[,]" including claims that describe "fantastic or delusional scenarios[.]" *Id.* at 327-28; *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Smith v. N. Cambria Police*, No. 25-1273, 2025 WL 1324070, at *1 (3d Cir. May 7, 2025) (*per curiam*) (quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). A claim is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

***5** Whether the Complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)). At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the Complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).

As Fata is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 245). However, conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue."). "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III. DISCUSSION

### A. Frivolous Claims

Fata contends that there is a vast conspiracy to frame him and cover up sexual abuse. (Compl. at 18.) He asserts that the conspiracy, which spans across two states, was started in 2017 by a "Christian religious-based organization" that recruited family members and government officials to oppress him "to the extreme of [his] death, by either manipulating a fatal 'accident' or 'situation' " or push him to commit suicide. (*Id.*)

Fata asserts a civil RICO claim based on this conspiracy, alleging that an "association-in-fact enterprise," consisting of all Defendants together with a "Christian religious organization," has been operating "with a shared goal (cover up of 2017 case) where state actors act as 'gatekeepers' and private actors act as 'enforcers.' " (*Id.* at 20.) He avers that the Defendants "agreed to a 'meeting of the minds' to utilize their official and private capacities to block [his] release and housing stability." (*Id.*) Fata contends that the enterprise has committed "racketeering acts" designed to sabotage "home plans and housing" to keep him "in a perpetual state of 'crisis' to impede his legal access to federal courts."[7] (*Id.* at 17, 20.)

***6** As the Court has advised Fata on numerous prior occasions, his allegations that a multistate conspiracy has been formed to push him to suicide or otherwise cause his death are wholly incredible and lack a basis in fact. Accordingly, the Court will dismiss any claims based on these allegations as factually baseless, without leave to amend. *See, e.g.*, *Caterbone v. Nat'l Sec. Agency*, 698 F. App'x 678, 679 (3d Cir. 2017) (*per curiam*) (dismissing appeal as

lacking an arguable basis in fact where underlying allegations were based on plaintiff's assertion that he was a "victim of U.S. sponsored mind control and cointelpro harassment program"); *Mina v. Chester County*, 679 F. App'x 192, 195 (3d Cir. 2017) (*per curiam*) (affirming dismissal of plaintiff's claims that 62 defendants had a vast conspiracy against him spanning twenty years); *Price v. Fed. Bureau of Investigation*, No. 20-3015, 2020 WL 4368063, at *3 (E.D. Pa. July 30, 2020), *aff'd*, 845 F. App'x 106 (3d Cir. 2021) (finding plaintiff's allegations to be factually frivolous where plaintiff asserted that "numerous law enforcement agencies, attorneys, prison officials, and medical professionals have used neurological and psychological technology to control the 'four basic groups of his brain and mental functions' and "that the use of this 'technology' and 'mind control' has caused him numerous impairments and drove him to criminal and erratic behavior"); *Jorge v. Torres*, No. 18-14674, 2019 WL 2385942, at *3 (D.N.J. June 6, 2019) ("Plaintiff's factual allegations that the Police are monitoring his every move and that the Police do so by telephone recruitment 'of informants, spies, and willing constituates [sic]' is exactly the type of 'fantastic or delusional scenario[ ]' warranting dismissal under 28 U.S.C. § 1915(e)(2)(B)(i)." (alterations in original)).

Moreover, Fata's RICO claims are legally baseless. RICO "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.' " *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)). To state a civil RICO claim, a plaintiff must plausibly allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (internal quotations omitted). " 'Racketeering activity' is defined in the RICO statute to comprise the state law offenses of murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, and dealing in a controlled substance or listed chemical, as well as several federal offenses such as mail and wire fraud." *Talley v. Halpern ex rel. Est. of Winderman*, No. 05-4184, 2005 WL 2002611, at *4 (E.D. Pa. Aug. 16, 2005) (citing 18 U.S.C. § 1961(1)). "According to the RICO statute, a 'pattern of racketeering activity' requires at least two acts of racketeering activity within a ten-year period." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 363 (quoting 18 U.S.C. § 1961(5)). Additionally, a plaintiff must have sustained "injury to business or property" caused by the alleged RICO violation to bring a RICO claim. *Maio v. Aetna, Inc.*, 221 F.3d 472, 482–83 (3d Cir. 2000).

Fata does not allege any conduct that could be considered racketeering activity for purposes of setting forth a legal basis for a RICO claim. *See Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("The claim that the defendants [including numerous judges, staff attorneys, and an assistant united states attorney] engaged in a RICO conspiracy by failing to properly address issues on appeal and 'bribing' witnesses to testify pursuant to plea agreements lacks any arguable basis in law and was properly dismissed as frivolous."); *Mierzwa v. Safe & Secure Self Storage, LLC*, 493 F. App'x 273, 276 (3d Cir. 2012) ("[C]onclusory allegations that defendants conspired for the purpose of defrauding [Mierzwa] are simply inadequate to plead a valid RICO claim.") Fata's conclusory allegations that more than twenty individuals employed by approximately ten different county, city, or private entities conspired with an unidentified "Christian religious-based organization" for the purpose of sabotaging his "home plans and housing" are inadequate to plead a valid RICO claim and he fails to allege any injury to his business or property. Accordingly, his civil RICO claims will be dismissed as legally baseless, without leave to amend. There are additional reasons, however, as to why Fata's claims cannot proceed.

**B. Civil Claims Based on Criminal Statutes**

***7** Fata cites several federal criminal statutes in his Complaint, namely 18 U.S.C. § 1203 (hostage taking), § 1512 (witness tampering), § 1589 (forced labor), and § 2261A (stalking). (Compl. at 1-2). To the extent he seeks to assert civil liability based on those statutes, his claims are not plausible because criminal statutes generally do not give rise to a basis for civil liability. *See Brown v. City of Philadelphia Office of Human Res.*, 735 F. App'x 55, 56 (3d Cir. 2018) (*per curiam*) ("Brown alleges that the defendants violated various criminal statutes, but most do not provide a private cause of action."). Indeed, the United States Supreme Court has stated that, unless specifically provided for, federal criminal statutes rarely create private rights of action. *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 377 (1958) (stating that where a statute "contains only penal sanctions for violation of it provisions; in the absence of a clear expression of congressional intent to the contrary, these sanctions should under familiar principles be considered exclusive, rather than supplemented by civil sanctions of a distinct statute"); *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition

alone."). The fact that a federal statute has been allegedly violated and some person harmed does not automatically give rise to a private cause of action for the injured person. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 689 (1979).

Claim one of Fata's Complaint asserts federal trafficking and hostage taking in violation of 18 U.S.C. §§ 1203, 1595, and 1589. (Compl. at 3-4.) However, the hostage taking statute, § 1203, does not give rise to civil liability. *Rodriguez v. City of Salem*, No. 23-01863, 2024 WL 4546365, at *4 (D. Or. Oct. 2, 2024), *report and recommendation adopted*, 2024 WL 4544317 (D. Or. Oct. 22, 2024) (concluding that 18 U.S.C. § 1203 "is part of federal criminal code, and there is no indication of a congressional intent to create a private right and private remedy"); *Kelly v. City of New Philadelphia*, No. 11-474, 2011 WL 3705151, at *2 n.3 (N.D. Ohio Aug. 22, 2011) (stating that 18 U.S.C. § 1203 does not provide for "a private right of action"). Fata's claims pursuant to the TVPRA, which encompasses 18 U.S.C. §§ 1589 and 1595, are also not plausible. Specifically, § 1589 does not provide a basis for a private cause of action. *See Brown v. U.S. Dist. Ct. for the E. Dist. of Pa.*, No. 18-747 (E.D. Pa.) (Apr. 19, 2018 Order at 6 (dismissing claims under 18 U.S.C. § 1589 as "meritless and frivolous")), *aff'd*, 740 F. App'x 239, 240 (3d Cir. 2018) (*per curiam*). Although 18 U.S.C. § 1595 provides for a civil remedy for violations of the TVPRA, Fata fails to allege any facts suggesting that Defendants either forced him into labor, trafficked him for forced labor, or benefitted financially from peonage or forced labor.[8] *See Brown v. U.S. Dist. Ct. for E. Dist. of Pa.*, No. 18-1108, 2018 WL 11463543, at *3 (E.D. Pa. Apr. 19, 2018), *aff'd sub nom., Brown v. City of Phila. Off. of Hum. Res.*, 735 F. App'x 55 (3d Cir. 2018).

In Fata's second claim, he alleges federal stalking and psychological coercion in violation of 18 U.S.C. § 2261A, but, again, there is no private right of action under that statute. *See Weisman v. Baur*, 2021 WL 3403519, at *2 (E.D. Pa. Aug. 4, 2021) (dismissing civil claim brought under 18 U.S.C. § 2261A); *Humphrey v. Pa. Ct. of Common Pleas of Phila.*, 2021 WL 268498, at *2 n.3 (E.D. Pa. Jan. 27, 2021) ("[N]umerous federal courts have held that no private right of action exists under [the Violence Against Women Act, 18 U.S.C. §§ 2261-2262].").

***8** Finally, in claim three, Fata asserts tampering with victims and witnesses in violation of 18 U.S.C. § 1512. (Compl. at 4.) However, the federal witness tampering statute, § 1512, does not provide a private cause of action. *Shaw v. City of Philadelphia*, No. 25-2941, 2025 WL 1689393, at *3 (E.D. Pa. June 13, 2025) (citing *Palencia v. N. Point Veterans Program-Turning Point*, No. 20-1691, 2020 WL 7059557, at *1 (W.D. Pa. Dec. 2, 2020) ("18 U.S.C. § 1512 is a criminal statute that does not create a private cause of action.")).

Fata also cites 18 Pa. Cons. Stat. §§ 4911 (tampering with public records or information) and 5301 (official oppression) as a basis for claims. (Compl. at 2.) Courts, including the United States Court of Appeals for the Third Circuit, routinely dismiss claims seeking to impose civil liability under various sections of the Pennsylvania Crimes Code, finding that the "Code gives no authority for a private cause of action and none has been implied." *Youst v. Roth*, No. 23-0848, 2023 WL 3821813, at *4 (E.D. Pa. June 5, 2023) (quoting *Martrano v. Quizno's Franchise Co.*, No. 08-0932, 2009 WL 1704469, at *12 (W.D. Pa. June 15, 2009)); *see also Williams v. Wetzel*, 827 F. App'x 158, 162 (3d Cir. 2020) (*per curiam*) (recognizing that plaintiff's civil claims brought pursuant to the Pennsylvania Crimes Code were properly rejected by the district court because there was no private right of action available under the Code); *Abouloh v. Lehigh Cnty. Prison*, No. 25-3377, 2025 WL 2654904, at *8 (E.D. Pa. Sept. 15, 2025). Accordingly, Fata's claims based on these criminal statutes will be dismissed with prejudice.

Similarly, any claims alleging criminal liability or a violation of a criminal statute as a basis for civil liability are dismissed with prejudice. (*See* Compl. at 5 wherein Fata seeks relief in the form of "criminal investigation and prosecution.") "A private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a citizen lacks standing to contest prosecutorial policies "when he himself is neither prosecuted nor threatened with prosecution.") (citations omitted). Fata cannot compel a criminal investigation by filing a complaint with this Court because the United States District Courts have no authority to order any law enforcement agencies or prosecutors to initiate investigations or prosecutions. *See Wagner v. United States Gov't*, No. 23-1626, 2023 WL 3948820, at *1 (D.D.C. June 9, 2023) (citing *Otero v. U.S. Attorney General*, 832 F.2d 141, 141-42 (11th Cir. 1987); *Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982)). "[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Wagner*, 2023 WL 3948820, at *1 (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)); *see also Smith v. Friel*, No. 19-943, 2019 WL 3025239, at *4 (M.D. Pa.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

June 4, 2019), *report and recommendation adopted*, 2019 WL 3003380 (M.D. Pa. July 10, 2019) (collecting cases and stating "courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties").

**C. Civil Rights Conspiracy Claims**

***9** Fata's fourth claim alleges a civil rights conspiracy in violation of 42 U.S.C. § 1985(3). (Compl. at 1, 4.) This section creates a cause of action against any two persons who "conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...." 42 U.S.C. § 1985(3). To state a plausible claim under § 1985(3) a plaintiff must allege the following elements: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). Significantly, the "language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct"); *Hauptmann v. Wilentz*, 570 F. Supp. 351, 386 (D.N.J. 1983) ("If the conspiracy only affects the plaintiff individually, the allegations will not satisfy the class-based animus requirement."), *aff'd sub nom., Appeal of Hauptmann*, 770 F.2d 1070 (3d Cir. 1985).

Moreover, a plaintiff must allege specific facts to state a plausible § 1985(3) claim. *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972) ("With near unanimity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3). A conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals."); *Grigsby v. Kane*, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003) ("[O]nly allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient."). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556. Fata's claims fail for several reasons. First, there is no allegation that a conspiracy was motivated by race or a class-based discriminatory animus as required by § 1985(3). Fata does not identify his race, nor does he make any allegation that race was the motivation behind the Defendants' alleged actions. Although Fata conclusively asserts that the "conspiracy was motivated by class-based (religious) animus" (Compl. at 4), the Complaint does not allege Fata's membership in any religion, nor does it suggest that any of the Defendants named harbored discriminatory animus against him on the basis of his religion. [9] Also, Fata asserts the existence of a conspiracy only in conclusory terms and provides no facts from which a conspiratorial agreement may be inferred. *Groce v. City of Phila. L. Dep't*, No. 21-5132, 2022 WL 493418, at *7 (E.D. Pa. Feb. 17, 2022) (dismissing conspiracy claim as wholly conclusory where the plaintiff failed to alleged facts regarding the formation of a conspiracy between any Defendants or any other individuals, the period of the conspiracy, or actions taken by the alleged conspirators to achieve the alleged purpose thereof). Fata's § 1985(3) claims are not plausible and will be dismissed.

**D. Due Process Claims**

***10** Fata alleges that the Defendants' actions in "arbitrarily denying and obstructing the 'legal' home plan process," resulted in the denial of his procedural due process rights under the Fourteenth Amendment. (Compl. at 4.) He also claims, without further explanation, that he was denied "meaningful administrative review." (*Id.* at 4-5.) Liberally construing his claims, Fata alleges that Defendants somehow caused him to remain improperly in custody rather than released on early parole at some point prior to the end of his maximum custodial sentence. The Court can discern no claim that rises to the level of a due process violation. [10]

The Fourteenth Amendment to the United States Constitution provides that the State may not "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. An examination of a procedural due process claim under the Fourteenth Amendment proceeds in two steps. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S.

564, 571 (1972). First, the court must determine whether there exists a liberty or property interest which has been interfered with by the state. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citing *Bd. of Regents*, 408 U.S. at 571). Second, if and only if a petitioner establishes the existence of a protected interest, the court must examine whether the procedures attendant upon that deprivation were constitutionally sufficient. *Id.*

A convicted individual has no constitutionally protected liberty interest in parole or otherwise being released before the expiration of a valid sentence. *See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Thomas v. Buechele*, 569 F. App'x 93, 95 (3d Cir. 2014) (concluding no due process violation caused by delayed parole because the plaintiff had "not alleged the deprivation of a protected liberty interest"). Thus, if prisoners in Pennsylvania have a protected liberty interest in some aspect of their parole, it must derive from Pennsylvania law. *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (recognizing that "States may ... create liberty interests which are protected by the Due Process Clause").

***11** The statutes governing Pennsylvania's Board of Probation and Parole, however, do not grant state prisoners any constitutionally protected liberty interest in being released on parole prior to the expiration of their controlling maximum sentences. *See Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996) (recognizing the general principle that the Pennsylvania parole statute does not create a liberty interest in the right to be paroled); *Coady v. Vaughn*, 770 A.2d 287, 289 (Pa. 2001) ("It is undisputed that [an inmate] does not have a clear legal right to the grant of parole, nor does the board have a corresponding duty to grant the same."). Since Fata has no constitutionally protected liberty interest in parole or any parole procedures, any due process violation based on Defendants' actions that allegedly led to his loss of parole necessarily must fail. *See, e.g., Newman v. Beard*, No. 06-214, 2008 WL 2149605, at *2 (W.D. Pa. May 21, 2008) (claim for violation of due process based on deficient parole procedures in interview conducted by the Pennsylvania Board of Probation and Parole fails because there is no liberty interest in parole or any of its procedures); *Nellom v. Luber*, No. 02-2190, 2004 WL 816922, at *10 (E.D. Pa. Mar. 18, 2004) (due process claim based on parole procedures fails because there is no constitutionally protected liberty interest in either being granted parole or having a parole hearing). For these reasons, any claims related to the loss of parole do not allege a separate violation of Fata's due process rights or otherwise state a plausible constitutional claim.

**E. Claims Based on Grievances**

Fata asserts in part that Warden Russell "rejected wrongfully" numerous grievances he made with respect to his attempts to secure home plans. (*See* Compl. at 8.) The Court has already dismissed any due process claims against Defendants based on Fata's denial of parole. To the extent Fata also asserts a stand-alone claim based on the grievance process, it too is dismissed because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)). Accordingly, allegations such as those raised by Fata predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

**IV. CONCLUSION**

For the foregoing reasons, the Court will dismiss Fata's Complaint in its entirety as frivolous and for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). Leave to amend will not be given as any attempt to amend would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002). An appropriate order follows.

**All Citations**

Slip Copy, 2026 WL 1831673

## Footnotes

1 The allegations set forth in this Memorandum are taken from Fata's Complaint (ECF No. 2) and state court dockets of which this Court may take judicial notice. *See* *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The Court has also considered the Exhibits filed by Fata on April 8, 2026. *See* ECF No. 5. The Court adopts the sequential pagination assigned to the Complaint by the CM/ECF docketing system. Grammar, spelling, and punctuation errors in quotes from Fata's submissions are cleaned up where necessary.

2 The allegations in Fata's "2nd Statement of Claim" (*see* Compl. at 18) are repetitive to those made in Fata's prior cases. *See* Civil Action Nos. 24-2402, 24-4862, 24-6934, 24-6935, and 24-6936. In these cases, Fata alleged that more than fifty different individuals, family members, attorneys, state and federal law enforcement agencies, and governmental entities from Pennsylvania and New Jersey had participated in a years-long conspiracy to cover up a 2017 crime inflicted on his son. In each case, the Court dismissed Fata's conspiracy claims as factually baseless. Fata appealed the dismissal of his Complaint in each case, and the United States Court of Appeals for the Third Circuit affirmed in all cases.

3 The Specialized Program Offering Recovery and Education ("SPORE") "is a partnership between the Office of Lehigh County Mental Health and the Juvenile Probation Department that provides a mental health caseworker and a probation officer to jointly and intensively supervise consumers who experience severe [mental health] problems." *See* Lehigh County, Pennsylvania, https://www.lehighcounty.org/Departments/Human-Services/Mental-Health/Adult-Mental-Health/-Case-Management (last visited June 12, 2026).

4 Public dockets reflect that Judge Caffrey entered orders on October 23, 2024 and November 20, 2024 denying Fata's motions for release to ARM. *See Fata*, No. CP-39-CR-0004857-2017.

5 Fata avers that the detectives denied him legal protection, ignored his request for a PFA against Goss, and "discarded physical evidence provided on an SD card regarding the 2017 conspiracy." (Compl. at 3.)

6 Fata received warnings for leaving the shelter after 7:00 a.m., not making his bed, bringing food into the shelter and eating it in the hallway, printing documents at 1:00 a.m., using his cell phone, and smoking cigarettes. (Compl. at 14-16.)

7 As part of his assertion that he was being "oppressed by the staff" at LCJ, Fata avers that he was "wrongfully" moved to "the hole" on September 27, 2024, "without penological justification." (Compl. at 4, 8.) He also alleges Defendants "knowingly exacerbate[ed] sleep deprivation—which required a Seroquel prescription—through institutional sabotage." (*Id.*) Fata's passing references to "cruel and unusual punishment" and "deliberate indifference" are unsupported by underlying allegations and thus insufficient to assert a plausible claim. *See* *Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) ("A passing reference to an issue will not suffice to bring that issue before this court.") (cleaned up) (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).

Moreover, in the prison context, "[d]ue process protection for a state created liberty interest is ... limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 486). In *Sandin*, the Supreme Court concluded that placement in disciplinary segregation for thirty days did not deprive the inmate of a protected liberty interest. *See* *Sandin*, 515 U.S. at 486; *see also* *Williams v. Bitner*, 307 F. App'x 609, 611 (3d Cir. 2009) (no liberty interest triggered by 90-day placement in disciplinary

segregation); *Smith*, 293 F.3d at 654 (no liberty interest triggered by seven-month placement in disciplinary confinement).

8 As a convicted inmate in custody for a parole violation, Fata also has no constitutional claim arising from forced labor while he was incarcerated. *See* *Dmytryszyn v. Hickenlooper*, 527 F. App'x 757, 760 (10th Cir. 2013) (holding that in the context of a convicted prisoner, the courts have held that prisoners have no Thirteenth Amendment or liberty or property interest in payment for their work and may be lawfully compelled to work) (nonprecedential).

9 Fata avers that the "evidence" supporting this claim is "the acceptance of an inmate with identical religious views" into Jubilee Ministries, while Fata was denied acceptance. (Compl. at 4.) Fata alleges that he was provided an application by Krasley, and he filled out the application and provided his "perspective on religion." (*Id.* at 9.) He alleges that the other inmate with "the very same perspective" was granted admittance and released from prison. (*Id.*) Fata, however, received "an abnormal denial letter" from Mark Habecker, who is not named as a Defendant, indicating that Fata "was 'not teachable' following a review of [his] religious perspective essay." (*Id.* at 9, 25.)

10 Fata also mentions that "Defendants Arcelly and Evans intentionally treated [him] differently than other similarly situated inmates" because they allegedly released other inmates to facilities while allegedly telling him that those facilities "were not approved home plans." (Compl. at 5.) Fata's mere recitation of the Fourteenth Amendment's Equal Protection Clause in the same claim as his due process claim fails to allege a separate plausible claim. To plead an equal protection violation plausibly, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.' " *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted). Fata does not allege that he is a member of a protected class or explain how he was discriminated against based on that membership. He also fails to allege how he was treated differently than other similarly situated inmates who were not in a protected class. *See* *Perano v. Twp. Of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) ("At the motion to dismiss stage, Perano must allege facts sufficient to make plausible the existence of such similarly situated parties."); *Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012) (rejecting equal protection claim when inmate did "not allege facts showing that he was similarly situated to the inmates" who received accommodations "or that there was no rational basis for his different treatment"); *Beitler v. City of Allentown*, No. 22-104, 2022 WL 768151, at *8 (E.D. Pa. Mar. 14, 2022) ("We should dismiss the claim when an incarcerated person fails to identify similarly situated individuals being treated differently."). Accordingly, any equal protection claim must be dismissed.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue-Striped Flag
Appeal Filed by Flores v. KW Call Center Services LLC, 2nd Cir., June 18, 2026

2026 WL 1481648
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Valerie FLORES, Plaintiff,
v.
KW CALL CENTER SERVICES
and Michelle Diaz, Defendants.

1:26-cv-122 (BKS/MJK)
|
Signed May 27, 2026

**Attorneys and Law Firms**

Plaintiff pro se: Valerie Flores, Albany, NY 12201

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, Chief United States District Judge

## I. INTRODUCTION

***1** Plaintiff pro se Valerie Flores brought this action alleging violations of: Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et. seq. ("ADEA"); 18 U.S.C. § 2261(a); and 18 U.S.C. § 1514. (Dkt. No. 1). Plaintiff also filed a motion to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2). This matter was referred to United States Magistrate Judge Mitchell J. Katz for an initial review pursuant to 28 U.S.C. § 1915(e)(2) and Local Rule 72.3(d). On February 5, 2026, Magistrate Judge Katz granted Plaintiff's application to proceed IFP, and issued a Report-Recommendation recommending that Plaintiff's complaint be dismissed without prejudice and with leave to amend. (Dkt. No. 5). On April 1, 2026, Plaintiff filed timely objections to the Report-Recommendation. (Dkt. No. 9). For the reasons that follow, the Report-Recommendation is adopted in its entirety.

## II. STANDARD OF REVIEW

The Court reviews de novo those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [Report-Recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (citation omitted). Properly raised objections must be "specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.*

## III. DISCUSSION

### A. Objection

Plaintiff objects "to the court dismissing the case with prejudice." (Dkt. No. 9, at 1). Plaintiff's objection is unfounded insofar as it challenges the Report-Recommendation, which recommends dismissal *without* prejudice and with leave to amend. [1] (Dkt. No. 5, at 8). As this is Plaintiff's only objection, the Court reviews the remainder of the Report-Recommendation for clear error.

In the Report-Recommendation, Magistrate Judge Katz recommended dismissal as to Defendant KW Call Center Services because the complaint failed to "plead any action or inaction that can be attributed to KW Call Center Services." (Dkt. No. 5, at 5). KW Call Center Services is not mentioned in the body of the complaint or in connection with any allegation. Thus, the Court finds no error in the dismissal recommendation. Magistrate Judge Katz also recommended dismissal of the claims against Defendant Michelle Diaz on the grounds that, without more, the allegations that Diaz failed to hire Plaintiff and may have stalked Plaintiff do not state claims for relief, and even if they did, venue is improper because such claims allegedly arose in Nevada and Illinois. (*Id.* at 5–6). The Court finds no error in the recommended dismissal of the claims against Diaz. However, the complaint cites several employment discrimination and other federal statutes that the Report-Recommendation did not discuss. (*See* Dkt. No. 1, at 3 (citing Title VII, ADA, ADEA, 18 U.S.C. § 2261(a), and 18 U.S.C. § 1514)). For the reasons that follow, the Court finds the complaint fails to state a claim for relief under any federal statute.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**B. Federal Statutes**

***2** Construed liberally, the complaint may be read to assert: (1) that Defendants' failure to hire her constituted unlawful discrimination or retaliation, in violation of Title VII, the ADA, and the ADEA; and (2) that Defendants violated 18 U.S.C. § 2261(a) (interstate domestic violence) and 18 U.S.C. § 1514 (authorizing government or court, on its own motion, to seek temporary restraining order in criminal case). (Dkt. No. 1, at 3).

**1. Individual Defendant Michelle Diaz**

Plaintiffs' Title VII, ADA, and ADEA claims against Diaz in her individual capacity, must be dismissed with prejudice because individuals are not subject to liability under these statutes. *See* *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (noting that "the remedial provisions of Title VII ... do not provide for individual liability"); *Garibaldi v. Anixter, Inc.*, 407 F. Supp. 2d 449, 451 (W.D.N.Y. 2006) ("[T]here is no individual liability under any of the federal anti-discrimination statutes, including Title VII, the ADA, and the ADEA.").

**2. Discrimination**

**a. Title VII**

Under Title VII, it is illegal "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To state a claim for relief under Title VII, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) h[er] race, color, religion, sex or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

In this case, the complaint fails to allege that Plaintiff falls within any category protected by Title VII, such as her gender, race, or religion, or any facts that would allow a plausible inference that Defendant KW Call Center Services discriminated against her on that basis. Indeed, as Magistrate Judge Katz noted, Plaintiff alleges no facts regarding Defendant KW Call Center Services. Thus, Plaintiff's Title VII discrimination claims against Defendant KW Call Center Services are dismissed without prejudice.

**b. ADA**

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A prima facie case of disability discrimination under the ADA requires a plaintiff to show: "(1) the defendant is covered by the ADA; (2) [the] plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) [the] plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) [the] plaintiff suffered an adverse employment action because of [her] disability or perceived disability." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 486 (S.D.N.Y. 2017) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)).

Here, the complaint fails to allege any facts suggesting that Plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA. Accordingly, the complaint fails to state a plausible claim for relief against KW Call Center Services under the ADA for employment discrimination.

**c. ADEA**

***3** The ADEA makes it "unlawful for an employer ... to discharge any individual ... because of such individual's age." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302 (2d Cir. 2021) (quoting 29 U.S.C. § 623(a)). "Under the ADEA ... a prima facie case of age discrimination consists of four elements: (1) the plaintiff's membership in a protected class; (2) the plaintiff's qualification for a particular position of employment; (3) an adverse employment action by the defendant employer; and (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation." *Lebowitz v. New York City Dep't of Educ.*, 407 F. Supp. 3d 158, 170 (E.D.N.Y. 2017) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015)).

The complaint contains no facts regarding Plaintiff's age or qualifications or suggesting that KW Call Center Services acted with discriminatory intent. Accordingly, Plaintiff's ADEA claims against Defendant KW Call Services are dismissed without prejudice.

### 3. Retaliation

"Claims for retaliation [under the ADA] are analyzed under the same burden-shifting framework established for Title VII cases." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002); *see Salas v. N.Y. City Dep't of Investigation*, 298 F. Supp. 3d 676, 685 (S.D.N.Y. 2018) (explaining that the ADA and Title VII contain "nearly identical language, and retaliation claims under the two statutes are analyzed under the same framework") (citing *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 222–23 (2d Cir. 2001)). Retaliation under the ADEA is likewise analyzed under the framework applicable to Title VII claims. *See Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006) (applying Title VII retaliation standards and burdens to ADEA). Thus, to state a claim or retaliation, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (internal quotation marks omitted).

The complaint alleges that after Plaintiff filed "an EEOC complaint," Diaz "may have stalked" Plaintiff. (Dkt. No. 1, at 5). However, as discussed, there is no individual liability under Title VII, the ADA, or the ADEA, and Plaintiff fails to assert any facts as to KW Call Center Services' alleged conduct. Accordingly, Plaintiff's Title VII, ADA, and ADEA retaliation claims are dismissed.

### 4. Other Statutes

Plaintiff also appears to assert claims under 18 U.S.C. § 2261(a), which is a criminal statute, and 18 U.S.C. § 1514, which allows the government to obtain a restraining order. However, neither of these statutes confer a private right of action on Plaintiff. *See Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86–87 (2d Cir. 1972) ("It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not ... by private complaints."); *McClure v. Menard Corr. Ctr.*, No. 11-cv-984, 2012 WL 3062235, at *4 (S.D. Ill. July 26, 2012) ("18 U.S.C. § 1514 provides a mechanism for protecting a victim or witness in a Federal criminal case, not a civil rights action."). Accordingly, any claims under 18 U.S.C. § 2261(a) and 18 U.S.C. § 1514, are dismissed with prejudice.

### C. Leave to Amend

"Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that [s]he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir 2000) (internal quotation marks and citations omitted). A pro se plaintiff should have at least one chance to amend if "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). However, a court may deny even a pro se plaintiff leave to amend when amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

***4** Here, while unlikely, the Court cannot say that, with better pleading, an amended complaint would be futile as to any claim dismissed *without prejudice*. Any such amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (internal quotation marks and citations omitted). Any exhibits that Plaintiff wishes the Court to consider going forward must be attached to the amended complaint. This means that the previous complaint and other filings will no longer be the operative documents—everything that is essential must be contained in or attached to the amended complaint.

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Katz's Report-Recommendation (Dkt. No. 5) is **ADOPTED** in its entirety, as set forth above; and it is further

**ORDERED** that Plaintiff's Title VII, ADA, and ADEA claims against Defendant Michelle Diaz, and Plaintiff's claims under 18 U.S.C. § 2261(a) and 18 U.S.C. § 1514 are **DISMISSED WITH PREJUDICE** and **WITHOUT**

**LEAVE TO AMEND** because they fail to state a claim as a matter of law; and it is further

**ORDERED** that the remainder of the complaint is **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that any amended complaint must be filed within thirty (30) days of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in total; and it is further

**ORDERED** that if Plaintiff timely files an amended complaint, it shall be referred to Magistrate Judge Katz for review; and it is further

**ORDERED** that, if Plaintiff fails to file an amended complaint within 30 days from the date of this Order or to request an extension of time to do so, the Clerk is directed to enter judgment without further order of the Court; and it is further;

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2026 WL 1481648

## Footnotes

1 However, for the reasons discussed elsewhere in this Order, the Court finds dismissal with prejudice is required as a matter of law as to several of Plaintiff's claims.

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 268498
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Abdul-Raheem Alonzo HUMPHREY, Plaintiff,
v.
PENNSYLVANIA COURT OF COMMON PLEAS OF PHILADELPHIA, et al., Defendants.

CIVIL ACTION NO. 20-CV-2335
|
Filed 01/27/2021

**Attorneys and Law Firms**

Abdul-Raheem Alonzo Humphrey, Camden, SC, pro se.

**MEMORANDUM**

RUFE, J.

***1** On May 15, 2020, *pro se* Plaintiff Abdul-Raheem Alonzo Humphrey filed a Complaint in this Court pursuant to 42 U.S.C. § 1983. Named as Defendants were the Pennsylvania Court of Common Pleas of Philadelphia, the Honorable Christopher Mallios, Astor Weiss Kaplan & Mandel LLP, David Gutin Esquire, Jordan Group, Nefertitti C. Jordan Esquire, and Ijnanya Young. In a Memorandum and Order filed on May 26, 2020, the Court granted Humphrey's request to proceed *in forma pauperis* and dismissed the Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). Humphrey was granted leave to file an amended complaint within thirty days if he was able to state a plausible claim over which this Court could exercise subject matter jurisdiction or, in the alternative, to refile his claims in an appropriate state court. (*See* ECF Nos. 6, 7.) When Humphrey failed to file an amended complaint within the stated time, the case was dismissed on July 17, 2020, with the Court repeating the provision that Humphrey could bring his claims in an appropriate state court. (ECF No. 8.)

On January 14, 2021, Humphrey filed a pleading labeled as a "Complaint" that the Clerk of Court docketed as an Amended Complaint in this action. (ECF No. 9.) Although the Complaint was filed months after deadline to amend, and after the case had been closed, the Court will reopen the case in the interests of justice and consider the merits of the Amended Complaint. However, because the Amended Complaint is an exact copy of the original Complaint to which Humphrey has merely attached exhibits, and accordingly suffers from the same defects the Court has already identified, it too must be dismissed.

**I. FACTUAL ALLEGATIONS**

As recited in the Court's prior Memorandum, Humphrey is the father of a four-year old child identified as "NH." (ECF No. 9 at 3.) [1] He asserts that NH's mother, Defendant Ijnanya Young, physically abuses the child. (*Id.*) Humphrey retained Defendants David Gutin and Nefertitti C. Jordan of the law firms Astor Weiss Kaplan & Mandel LLP and Jordan Group respectively on December 3, 2019 to seek a protection from abuse order in the Court of Common Pleas. (*Id.*) He provided a medical report to the attorneys to use as proof of the abuse. (*Id.*)

Rather than submit the report, Gutin asked the Court for a continuance. (*Id.*) Humphrey asserts that Young called him 36 times on December 10, 2019 to threaten his family. (*Id.*) He reported this conduct to Gutin and to the authorities where he lives in South Carolina. (*Id.*) On December 27, 2019, Humphrey fired his attorneys. (*Id.*) On January 28, 2020, the attorneys moved to withdraw their appearances before the Common Pleas Court and Humphrey asked for a continuance of the matter to find new counsel, but the request was denied. (*Id.*) On February 12, 2020, Humphrey was "found to be in Contempt [of a] fugitive warrant." (*Id.*) He again requested a continuance of the Common Pleas proceeding, but this request was also denied, and Young was granted temporary custody of NH on March 6, 2020 by Judge Mallios. (*Id.*) On March 26, 2020, Judge Mallios denied the request for a protection from abuse order. (*Id.*)

***2** In his new pleading, Humphrey again asserts claims against all Defendants pursuant to 42 U.S.C. § 1983. (*Id.*) He again asks this Court to grant him sole custody of NH until the child reaches his eighteenth birthday. (*Id.* at 4.) He also seeks money damages to pay for NH's support and therapy until his twenty-first birthday. (*Id.*)

The only difference between Humphrey's original Complaint and his recent submission is that he has appended to the new document approximately 53 pages of exhibits constituting medical records for NH, pictures apparently showing evidence of abuse, and copies of documents filed in a state court protection from abuse proceeding. (*Id.* at 6-58.) [2]

**II. STANDARD OF REVIEW**

Because the Court has granted Humphrey leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Humphrey is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

**III. DISCUSSION**

Humphrey again seeks to assert federal constitutional claims under 42 U.S.C. § 1983.[3] That section provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

**A. Claims Against the Court of Common Pleas**

***3** The Court previously dismissed Humphrey's claims against the Philadelphia Court of Common Pleas as barred by the Eleventh Amendment. The Eleventh Amendment bars suits against a state and its agencies in federal court. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). The Court of Common Pleas, as part of Pennsylvania's unified judicial system, shares in the Commonwealth's Eleventh Amendment immunity. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005). As there is no indication Pennsylvania has waived its Eleventh Amendment immunity, Humphrey's claims against the Philadelphia Court of Common Pleas is again dismissed with prejudice as barred by the Eleventh Amendment.

**B. Claims Against Judge Mallios**

The Court previously dismissed Humphrey's claims against Judge Mallios because judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (per curiam); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Moreover, "[g]enerally ... 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.' " *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)). Humphrey's claims against Judge Mallios are again based upon his actions in his judicial capacity in presiding over the protection from abuse proceedings. Accordingly, Judge Mallios enjoys absolute immunity from suit and Humphrey's claims must be dismissed with prejudice under § 1915(e)(2)(B).

**C. Claims Against Attorneys**

The Court previously dismissed Humphrey's claims against his attorneys, Astor Weiss Kaplan & Mandel LLP, David Gutin Esquire, Jordan Group, and Nefertitti C. Jordan Esquire, because private attorneys are not "state actors" subject to liability under § 1983. *See Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."). As the new submission again attempts to state § 1983 claims against these non-state actors, the claims again must be dismissed.

**D. Claims Against Ijnanya Young**

The Court previously dismissed Humphrey's claims against the mother of his child. She too was found to not be a state actor subject to liability under § 1983. The Court also noted previously that, to the extent that Humphrey's original Complaint could be read as an attempt to relitigate custody of the child, it has been well established for over 150 years that federal courts lack jurisdiction to hear cases concerning divorce, alimony, or child custody cases. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (concluding "that the domestic relations exception, as articulated by this Court since *Barber [v. Barber*, 62 U.S. 582 (1858)], divests the federal courts of power to issue divorce, alimony, and child custody decrees."); *see also Barber*, 62 U.S. at 584 (stating "[w]e disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony"); *Ex parte Burrus*, 136 U.S. 586, 593-94 (1890) (stating that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States."). Humphrey's claims against Young again appear to challenge state court proceedings that have decided child custody and visitation disputes; Plaintiff specifically seeks sole legal and physical custody, which this Court cannot grant. "As a matter of judicial economy, state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees." *Ankenbrandt*, 504 U.S. at 704. Accordingly, for the reasons previously expressed, this claim must also be dismissed, without prejudice to assertion in the appropriate state court.

**IV. CONCLUSION**

***4** For the reasons stated, Humphrey's claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). Because the Court has afforded Humphrey an opportunity to amend and any further attempt at amendment to state claims over which this Court can exercise jurisdiction would appear to be futile, the dismissal of all federal law claims will be with prejudice, *see Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-113 (3d Cir. 2002). Any claims under state law are dismissed for lack of subject matter jurisdiction without prejudice to their being asserted in an appropriate state court. This case will be marked closed. An appropriate Order follows.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 268498

## Footnotes

1 The Court adopts the pagination supplied by the CM/ECF docketing system.

2 Because the exhibits contain information such as the name, birthdate, and medical records of a minor child, as well as other personal identifiers, the Court will order that the exhibits be placed under seal.

3 While Humphrey has not brought any claims under state law, he again mentions a criminal statute, the Violence Against Women Act, 18 U.S.C. § 2261-2262. Any claim under this Act, to the extent that Humphrey again seeks to raise a distinct claim based on a violation of that statute, is dismissed pursuant to § 1915(e)(2)(B). As the Court previously held, numerous federal courts have held that no private right of action exists under this specific statute. *See, e.g., Rock v. BAE Systems, Inc.*, 556 F. App'x 869, 871 (11th Cir. 2014) ("Section 2261 also does not explicitly contain a private right of action...."); *Hopson v. Commonwealth Atty. Office*, Civ. A. No. 12-744, 2013 WL 1411234, at *4 (W.D. Ky. Apr. 8, 2013) ("There is nothing in § 2262(a)(1) that would lead to ... a conclusion [that a private right of action exists under the statute.] Violations of § 2262(a)(1) are criminal offenses. Congress specifically set forth that violations of § 2262(a)(1) are punishable by imprisonment or fines or both.... There is no indication that Congress intended to create a private cause of action under 18 U.S.C. § 2262(a)(1)."); *Smith v. Daniel*, Civ. A. No. 17-111, 2017 WL 1352229 at *2 (N.D. Fla. Mar. 17, 2017) (holding that the plaintiff lacked standing to bring claims under §§ 2261A and, 2262), *report and recommendation adopted over objections*, 2017 WL 1370734 (N.D. Fla. Apr. 5, 2017); *Ortiz v.*

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

*Perry*, Civ. A. No. 17-489, 2017 WL 11473894, at *3 (N.D. Okla. Sept. 26, 2017), *report and recommendation adopted*, 2017 WL 11473895 (N.D. Okla. Oct. 23, 2017) ("Although there are federal criminal laws prohibiting interstate stalking and interstate violations of a state-issued protective order, see 18 U.S.C. §§ 2261A, 2262, these laws do not provide civil remedies....").

Moreover, private citizens have no authority to enforce federal criminal statutes. *Diamond v. Charles*, 476 U.S. 54, 64 (1986) (stating that it is well established that private citizens do not have "a judicially cognizable interest in the prosecution or nonprosecution of another.").

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1982319
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Jason William LANG, Plaintiff-Appellant,
v.
Hillary R. CLINTON, et al., Defendants-Appellees.

25-126
|
May 21, 2025

W.D.N.Y., 24-cv-19, Wolford, C.J.

**Attorneys and Law Firms**

Jason William Lang, Lockport, NY, Pro Se.

Tiffany H. Lee, Assistant United States Attorney, U.S. Attorney, United States Attorney's Office for the Western District of New York, Buffalo, NY, for Defendant-Appellee Donald Trump.

Donald Trump, Pro Se.

Present: Amalya L. Kearse, Dennis Jacobs, Raymond J. Lohier, Jr., Circuit Judges.

**Opinion**

***1** Appellant, pro se, moves for leave to proceed in forma pauperis and injunctive relief. Upon due consideration, it is hereby ORDERED that the motions are DENIED and the appeal is DISMISSED because it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see* 28 U.S.C. § 1915(e).

**All Citations**

Not Reported in Fed. Rptr., 2025 WL 1982319

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 1855058
Only the Westlaw citation is currently available.
Supreme Court of the United States.

Jason William LANG, Petitioner,
v.
Hillary R. CLINTON, et al.

No. 25-7273
|
June 29, 2026

Case below, 2025 WL 1982319.

**Opinion**

***1** Petition for writ of certiorari to the United States Court of Appeals for the Second Circuit denied.

**All Citations**

--- S.Ct. ----, 2026 WL 1855058 (Mem)

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 3352758
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Sheila ROBINSON, Plaintiff,
v.
Mark WILLIAMS, et al., Defendants.

6:22-CV-0982 (GTS/ML)
|
Signed January 12, 2023

**Attorneys and Law Firms**

SHEILA ROBINSON, Plaintiff, Pro Se, 939 Ontario Avenue, Niagara Falls, New York 14301.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

***1** The Clerk has sent a *pro se* complaint in the above captioned action together with (1) an application to proceed *in forma pauperis*, and (2) an application to appoint counsel, filed by Sheila Robinson ("Plaintiff") to the Court for review. (Dkt. Nos. 1, 2, 5.) For the reasons discussed below, I (1) grant Plaintiff's *in forma pauperis* application, (2) deny Plaintiff's motion for appointment of counsel, and (3) recommend that Plaintiff's Complaint be dismissed in its entirety (a) in part with leave to amend, and (b) in part without leave to amend. (Dkt. Nos. 1, 2, 5.)

## I. BACKGROUND

Construed as liberally[1] as possible, Plaintiff's Complaint alleges that she formed clothing brands and has since been targeted and harassed by defendants Mark Williams, Kyle Piersall, John De Traglia, Joseph Aiello, Brian Baye, Marissa Vomer, K. Phillips, Benny Grullon, Derek Schultz, Reginald Sanders, Brian French, Hiram Rios, Louis L. Stanton, John Does, Letitia James, Chuck Schumer, Amazon.com, Jeff Bezos, Facebook.com, Mark Zuckerberg, Google.com, Sergin Brin, Larry Page, Sundar Pichai, Zazzle.com, Robert Beaver, Cafepress.com, Bob Marino, Fred Durham, Redbubble.com, Barry Newstead, Martin Hopskin, Utica New York Police Department, and City of Utica in New York State (collectively "Defendants"). (*See generally* Dkt. No. 1.) More specifically, Plaintiff alleges that she frequented Miller Park in Utica, New York. (Dkt. No. 1 at 5.) Plaintiff alleges that when she would go to Miller Park, Utica police officers would also be present in the park and that the police officers' presence in the park at the same time as Plaintiff put her in "fear of [her] safety and well being" such that she "stopped going to [the] park in fear of being shot by the [U]tica police." (*Id.*)

Plaintiff alleges that, at some point in time, she called the police regarding issues she was having with third-party, Biory Chavez Tinco. (*Id.*) Plaintiff alleges that she sought to pursue charges against Mr. Tinco and to obtain a restraining order that would protect her from Mr. Tinco, but that the Utica police officers refused to arrest Mr. Tinco or assist Plaintiff in obtaining an order of protection. (*Id.* at 5-6.)

Plaintiff alleges that, at some point in time, she went to get her mail and an unnamed maintenance person "came out and provoked [P]laintiff into accidentally macing,"[2] the maintenance person then called the police, Plaintiff was arrested, and paid a $300 fine. (*Id.* at 6.)

Plaintiff alleges that a building located next to her residence is a nuisance because it is a gathering place for drug users and dealers. (*Id.* at 6.) Plaintiff alleges that she sought police assistance "multiple times" to address individuals from the property next door who trespassed on to her property. (*Id.*) However, Plaintiff alleges that the Utica police refused to arrest individuals that criminally trespassed and did not conduct warrant checks on the trespassers. (*Id.* at 6-7.)

***2** Plaintiff alleges that Defendant Derek Schultz filed a false statement that Plaintiff was suffering from mental illness. (*Id.* at 7.) Plaintiff alleges that Defendant Marissa Vomer filed a false statement stating that Plaintiff was rambling. (*Id.*) Plaintiff alleges that Defendant Reginald Sanders retaliated against Plaintiff by refusing to arrest third-party T. Jones and stating to Plaintiff "you wanted Utica police fired[.] [W]hy should we help you[?]" (*Id.*)

Plaintiff alleges that Defendant Louis Stanton was the assigned judge to another one of her civil cases and that he conspired to violate Plaintiff's right to a jury trial. (*Id.* at 8.) More specifically, Plaintiff alleges that Defendant Stanton dismissed Plaintiff's civil case against "tech-giants" via electronic notice so that Plaintiff would not receive the notice in time to appeal the decision. (*Id.*)

Plaintiff alleges that she contacted the New York State Attorney General's office multiple times regarding the harassment she experienced by "one or more of the tech-giants" and the stalking that she experienced at Miller Park by the Utica police officers but that the New York State Attorney General's office informed her that it does not investigate those matters and directed Plaintiff to obtain her own attorney. (*Id.* at 9-10.)

Plaintiff alleges that unnamed "New York State Officials" deprived her of "Erap arrears" by incorrectly and "intentionally posting online that [P]laintiff had not uploaded [the] required documents." (*Id.* at 10-11.)

Plaintiff alleges that she contacted Defendant Chuck Schumer to help her "stop and collect the unauthorized apparel from [A]mazon warehouses" after Plaintiff saw that her clothing line brand was being improperly sold by Defendant Amazon.com. (*Id.* at 11.) Plaintiff alleges that Defendant Schumer failed to assist her because his family members are employed by Defendant Amazon.com. (*Id.*)

Plaintiff alleges that third-party Yahoo.com and Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Jeff Bezos, and Mark Zuckerberg, conspired to target, cyberstalk, and stalk Plaintiff to interfere with her civil right to make online profits. (*Id.* at 11.) Plaintiff also alleges that Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Jeff Bezos, and Mark Zuckerberg racially targeted her because she is a Black American and they are white or of Asian descent. (*Id.* at 12.)

Based on these factual allegations, Plaintiff appears to assert the following ten claims: (1) a claim against Defendant Utica Police Department for its conduct at Miller Park in violation of the Fourth Amendment and 42 U.S.C. § 1983; (2) a claim against Defendant Utica Police Department for its refusal to arrest Mr. Tinco and obtain an order of protection in favor of Plaintiff against Mr. Tinco in violation of the Fourteenth Amendment and 42 U.S.C. § 1983; (3) a claim against Defendant Utica Police Department for its refusal to arrest individuals who trespassed on Plaintiff's residence in violation of the Fourteenth Amendment and 42 U.S.C. § 1983; (4) a claim against Defendant Stanton for violating Plaintiff's due process right to a jury trial pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; (5) a claim against Defendant Stanton for sending a dismissal notice electronically in violation of the First Amendment and 42 U.S.C. § 1983; (6) a claim against the New York State Attorney General's Office for failure to investigate and enforce the laws in violation of the Fourteenth Amendment and 42 U.S.C § 1983; (7) a claim against unnamed New York State officials for interfering with Plaintiff's right to equal housing in violation of the Fourteenth Amendment and 42 U.S.C. § 1983; (8) a claim against Defendant Schumer for violating Plaintiff's right to equal protection under the law pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; (9) a claim against Yahoo.com and Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Jeff Bezos, and Mark Zuckerberg for conspiracy to deprive Plaintiff equal protection under the law pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; and (10) a claim against "the Tech-Giant gang" for stalking, cyberstalking, and harming Plaintiff. (*See generally* Dkt. No. 1.)

***3** As relief, Plaintiff seeks, *inter alia*, $100,000,000,000 in compensatory damages, punitive damages in the amount of $300,000,000,000, and costs and attorney's fees. (*Id.*)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [3] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted. [4]

## III. LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [5]

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

***4** A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. Claims Against the Utica Police Department

"Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")), *report and recommendation adopted by* 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.).

As a result, I recommend that all claims against Defendant Utica Police Department be dismissed for failure to state a claim upon which relief may be granted.

Moreover, to the extent that the Court is inclined—for the sake of judicial efficiency—to review Plaintiff's claims against Defendant Utica Police Department, as against Defendant City of Utica, I still recommend dismissal of Plaintiff's claims for failure to state a claim upon which relief may be granted.

A municipality may only be named as a defendant in certain circumstances. Pursuant to the standard for establishing municipal liability laid out in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), in order to set forth a cognizable claim for municipal liability under Section 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer."). A municipality may be liable for deprivation of constitutional rights under Section 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). A plaintiff must also establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights. *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985) (plurality opinion). Indeed,

municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it "may not be held liable on a theory of *respondeat superior.*" *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000).

***5** Critically, "a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). As the Second Circuit has noted, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also id.* (noting that once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct").

**1. Miller Park**

I recommend that Plaintiff's claims with respect to Miller Park be dismissed for failure to state a claim upon which relief may be granted. The allegation that police officers are merely present in a public space, such as a park, at the same time as Plaintiff fails to allege that Plaintiff's rights were violated in any way. *See Hickombottom v. City of Chicago,* 739 F. Supp. 1173, 1179 (N.D. Ill. 1990) (police surveillance of plaintiff's apartment did not violate the Fourth Amendment in that plaintiff had no reasonable expectation of privacy as to his comings and goings); *Phillips v. City of San Jose*, C-94-20468, 1994 WL 706213, at *4 (N.D. Cal. Dec. 13, 1994) (allegations that the police officers followed and observed plaintiff in public areas were not sufficiently egregious to constitute a due process violation under the Fourteenth Amendment).

Moreover, courts in this Circuit have routinely dismissed similar claims as factually frivolous. *See McNaughton v. de Blasio*, 20-CV-6991, 2020 WL 5983100, at *4-5 (S.D.N.Y. Oct. 8, 2020) (dismissing as frivolous the plaintiff's allegations including, *inter alia*, that the N.Y.P.D. was enlisting parents and their children in an elaborate scheme to lure the plaintiff into committing pedophilic acts); *Gamez v. U.S. Dist. Court Eastern and Southern Dist. of-Tyranny, New York*, 11-CV-4068, 2011 WL 3949807, at *2 (E.D.N.Y. Sept. 6, 2011) (dismissing as factually frivolous, the plaintiff's claims that the police were stalking, ambushing, and illegally surveilling him). "[A finding of] factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). The term "frivolous" embraces "not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Plaintiff's allegations, even under a liberal reading that the courts give *pro se* pleadings, easily qualify as frivolous under the standard asserted above. *See Denton,* 504 U.S. at 33.

As a result, I recommend that Plaintiff's claims regarding Miller Park be dismissed for failure to state a claim upon which relief may be granted and, in the alternative, for frivolity.

**2. Failure to Arrest Mr. Tinco**

To the extent that Plaintiff's Complaint asserts a claim based on an alleged failure to file charges against Mr. Tinco or help Plaintiff obtain an order of protection against Mr. Tinco, I recommend that it be dismissed. Plaintiff does not have standing to compel any law enforcement agency to prosecute suspected criminal acts because there is no private right of action to enforce state or federal criminal statutes. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Walker v. CIBC Ltd.*, 20-CV-1337, 2021 WL 3518439, at *5 (N.D.N.Y. Apr. 13, 2021) (Hummel, M.J.) ("It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction."), *report-recommendation adopted by* 2021 WL 3204860 (N.D.N.Y. July 29, 2021) (McAvoy, J.); *McFadden v. Ortiz*, 12-CV-1244, 2013 WL 1789593, at *3 (N.D.N.Y. Apr. 26, 2013) (D'Agostino, J.) (holding that "there is no private right of action to enforce either state or federal criminal statutes.").

***6** As a result, I recommend that Plaintiff's claims regarding the failure to arrest Mr. Tinco be dismissed.

**3. Failure to Arrest Trespassers**

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

For the reasons set forth above in Part IV.A.2. of this Order and Report-Recommendation, I recommend that Plaintiff's claims regarding the failure to arrest alleged trespassers be dismissed for lack of standing.

**B. Claims Against Defendant Stanton**

Plaintiff's Complaint appears to assert claims against Defendant Stanton in his individual and official capacity, for actions he allegedly took in his position as Senior United States District Judge of the Southern District of New York. (Dkt. No. 1 at 8-9.)

It is well settled that "officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *see also* *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (citations omitted) ("A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages. Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'"); *Mahapatra v. Comstock*, 97-CV-7129, 1998 WL 88054, at *1 (2d Cir. Feb. 26, 1998) ("[T]he district court properly dismissed the claims for damages based on absolute immunity. Judges are shielded from liability for civil damages for judicial acts performed in their judicial capacities."); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 523 (E.D.N.Y. 2010) ("It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions."). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978).

Plaintiff's allegations regarding Defendant Stanton appear to relate to actions he took as judge, while presiding over another civil proceeding initiated by Plaintiff. (*See generally* Dkt. No. 1.) The Complaint is devoid of facts plausibly suggesting that Defendant Stanton took any action as an individual, and therefore also fails to allege that he acted in the clear absence of all jurisdiction. As a result, I recommend that the claims against Defendant Stanton be dismissed in their entirety based on the doctrine of absolute judicial immunity.

**C. Claims Against New York State Attorney General's Office**

As set forth above in Part IV.A.2. of this Order and Report-Recommendation, this Court does not have authority to commence its own investigation, commence criminal prosecution, compel a law enforcement agency to investigate suspected criminal activity, or compel a prosecutor to prosecute. Prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972).

***7** As a result, I recommend that Plaintiff's claims against the New York State Attorney General's Office be dismissed.

**D. Claims Against Unnamed New York State Officials**

I recommend that Plaintiff's claims against unnamed New York State officials regarding the denial of her Emergency Rental Assistance Program ("ERAP") housing application, be dismissed.

First, to the extent that those claims are asserted against employees of New York State in their official capacity, they are barred by the Eleventh Amendment. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009).

New York [6] has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See* *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). The Eleventh Amendment therefore bars Plaintiff's § 1983 claims against New York State officials in their official capacity as employees of New York State from proceeding in federal court.

Second, Courts have held that there is no private cause of action for the denial of an application for federally funded emergency rental assistance program funds. [7] *See Wexler v. Dep't of Children and Families*, 22-CV-1111, 2022 WL 5250140, at *2 (M.D. Fla. Sept. 19, 2022) (recommending dismissal of the plaintiffs' claims alleging that their federal Emergency Rental Assistance Program applications were

mishandled and misappropriated and holding that "there is no express or implied cause of action under the CAA and the undersigned is aware of no Court ... that has found otherwise"); *Turner v. Hamilton Cnty. Trustee Assn.*, 22-CV-0275, 2022 WL 1606289, at *4 (S.D. Ind. May 20, 2022) (dismissing the plaintiff's claim that his application for federally funded Emergency Rental Assistance Program was improperly denied as fraudulent and holding that "there is no private right of action created, expressly or impliedly, by Congress in the CAA or the CARES Act.").

As a result, I recommend that Plaintiff's claims against unnamed New York State officials for denial of her ERAP application, be dismissed based on the doctrine of immunity pursuant to the Eleventh Amendment and because it fails to state a claim upon which relief may be granted.

**E. Claims Against Defendant Schumer**

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." *Chaney v. Koupash*, 04-CV-0126, 2008 WL 5423419, at *20 (N.D.N.Y. Dec. 30, 2008) (Homer, M.J.) (citing *Myers v. Barrett*, 95-CV-1534, 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997) (Pooler, J.)). In addition, a valid equal protection claim may be brought by a "class of one" "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005).

***8** Plaintiff fails to allege any facts plausibly suggesting that she was treated differently from similarly situated individuals or any other individuals. Vague and conclusory allegations, are insufficient to plausibly suggest an equal protection violation. *See De Jesus v. Sears Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996); *see Byng v. Delta Recovery Servs.*, LLC., 13-CV-0733, 2013 WL 3897485, at *15, n. 5 (N.D.N.Y. July 29, 2013) (D'Agostino, J.) (finding that Attica inmate alleged no facts in the complaint to indicate he was similarly situated to anyone or that someone else was treated differently than he was). The Complaint is devoid of allegations plausibly suggesting that Plaintiff was similarly situated to anyone or that she was treated differently. Accordingly, I recommend that Plaintiff's Fourteenth Amendment Equal Protection claims against Defendant Schumer be dismissed for failure to state a claim upon which relief may be granted. [8]

Further, to the extent that Plaintiff attempts to state conspiracy claims pursuant to 42 U.S.C. §§ 1985, 1986, I recommend that they be dismissed for failure to state a claim upon which relief may be granted.

"[T]o make out a violation of § 1985(3) ..., the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Brotherhood of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 103 S. Ct. 3352, 3356 (1983). A "conspiracy" requires, for purposes of Section 1985, "a plurality of actors committed to a common goal." *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 456 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999).

In addition, a claim pursuant to Section 1985 requires that a plaintiff allege "some racial or [ ] otherwise class-based animus behind the conspirators' action." *Palmieri v. Lynch*, 392 F.3d 73, 86 (2d Cir. 2004). The Complaint fails to allege any racial or class-based animus other than one conclusory assertion that the "Tech-giants" racially targeted Plaintiff because she is a Black American "and all the tech-giant defendants are of white or Asian" descent. (*See generally* Dkt. No. 1.) "[C]onclusory allegations are inadequate to make out a claim under Section 1985." *Jones v. Nat'l Commc'n and Surveillance Networks*, 409 F. Supp. 2d 456, 472 (S.D.N.Y. 2006) (citing *Salgado v. City of N.Y.*, 00-CV-3667, 2001 WL 290051, at *8 (S.D.N.Y. Mar. 26, 2001); *Sadler v. Brown*, 793 F. Supp. 87, 90 (S.D.N.Y. 1992)). Thus, Plaintiff does not sufficiently allege a conspiracy between Defendant Schumer and/or others to deprive Plaintiff of any federally protected rights.

Likewise, Plaintiff does not allege a claim under Section 1986, which proscribes knowingly failing to prevent a Section 1985 conspiracy "which such person by reasonable diligence could have prevented," and explicitly requires an underlying

conspiracy under Section 1985. *See Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000) ("[A] § 1986 claim must be predicated on a valid § 1985 claim.").

***9** As a result, I recommend that Plaintiff's claims against Defendant Schumer be dismissed.

**F. Claims Against Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, and Zuckerberg**

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under color of state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Generally, private parties are not state actors, and are not liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties....") (internal quotation marks and citations omitted). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' " *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) (citing *Blum v. Yartsky*, 457 U.S. 991, 1002 (1982)). A private defendant may be held liable only as "a willing participant in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). Claims under § 1983 can be brought against private entities by "showing that a person acting under color of state law ... collaborated with a private person ... to deprive the plaintiff of a constitutional right." *Fries v. Barns*, 618 F.2d 988, 990 (2d Cir. 1980) (citing *Adickes*, 398 U.S. at 144).

Here, the Complaint fails to allege facts plausibly suggesting that Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, and Zuckerberg were "state actors" or were "collaborating" with state actors. Plaintiff's inclusion of citations to the statute—42 U.S.C. § 1983—in her Complaint, does not change that the Complaint is devoid of factual allegations alleging any state involvement by Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, and Zuckerberg. (*See generally* Dkt. No. 1.)

Moreover, to the extent that Plaintiff sought to allege a claim against Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, and Zuckerberg for stalking, cyberstalking, and harming Plaintiff, there is no private cause of action for stalking or general "harm." *Sonnick v. Budlong*, 20-CV-0410, 2020 WL 2999109, at *5, 9 n.8, 11 (N.D.N.Y. June 4, 2020) (Lovic, M.J.) (citations omitted) ("[F]ederal stalking is a crime pursuant to 18 U.S.C. § 2261A, and does not provide for a private cause of action.... New York does not recognize private causes of action for stalking, harassment, or trespass."), *report and recommendation adopted by* 2020 WL 4345004 (N.D.N.Y. July 29, 2020) (McAvoy, J.).

***10** As a result, I recommend that Plaintiff's claims against Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, and Zuckerberg be dismissed for failure to state a claim upon which relief may be granted.

**G. Conspiracy**

As set forth above in Part IV. E. of this Order and Report-Recommendation, the Complaint fails to allege facts plausibly suggesting racial or class-based animus—other than Plaintiff's legally insufficient, conclusory assertion that unnamed "Tech-giants" racially targeted Plaintiff because she is a Black American "and all the tech-giant defendants are of white or Asian" descent. (Dkt. No. 1 at 12.) Thus, Plaintiff does not sufficiently allege a conspiracy between Defendants and/or others to deprive her of any federally protected rights pursuant to 42 U.S.C. § 1985. Moreover, because Plaintiff fails to allege an underlying conspiracy pursuant to 42 U.S.C. § 1985, she likewise fails to allege a claim pursuant to 42 U.S.C. § 1986, which proscribes knowingly failing to prevent a Section 1985 conspiracy.

As a result, to the extent that Plaintiff alleges conspiracy claims pursuant to 42 U.S.C. §§ 1985, 1986 against any Defendant, I recommend that they be dismissed.

**H. Claims Against Defendants Williams, Piersall, De Traglia, Aiello, Baye, Phillips, Grullon, French, Rios,**

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**John Does, James, Brin, Page, Pichai, Beaver, Marino, Durham, Newstead, and Hopskin**

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted).

The caption of the Complaint lists Defendants Williams, Piersall, De Traglia, Aiello, Baye, Phillips, Grullon, French, Rios, John Does, James, Brin, Page, Pichai, Beaver, Marino, Durham, Newstead, and Hopskin but the body of the Complaint does not contain any factual allegations regarding them. Thus, I recommend that Plaintiff's claims against Defendants Williams, Piersall, De Traglia, Aiello, Baye, Phillips, Grullon, French, Rios, John Does, James, Brin, Page, Pichai, Beaver, Marino, Durham, Newstead, and Hopskin be dismissed. *See Johnson v. Gonzalez*, 14-CV-0745, 2015 WL 1179384, at *6 (N.D.N.Y. Mar. 13, 2015) (Kahn, J.) (dismissing the claims against a defendant where the complaint lists the defendant's "name in the caption, but fails to again name or assert allegations against him."); *Serrano v. New York State Dep't of Envtl. Conservation*, 12-CV-1592, 2013 WL 6816787, at *15 (N.D.N.Y. Dec. 20, 2013) (D'Agostino, J.) (citing *Jaffer v. Chemical Bank*, 93-CV-8459, 1994 WL 392260, at *3 (S.D.N.Y. July 26, 1994) (holding that "[w]hen a complaint's caption names a defendant but the complaint does not indicate that the named party injured the plaintiff or violated the law, the motion to dismiss must be granted")) (dismissing the plaintiff's claims against two defendants who were listed as parties in the complaint and in the caption, but not elsewhere in the complaint).

**I. Statements of Defendants Schultz, Vomer, and Sanders**

***11** Having found that all of Plaintiff's federal claims are subject to dismissal, I recommend that, to the extent Plaintiff has asserted any state law claims—such as defamation claims against Defendants Schultz, Vomer, and Sanders [9]— the Court decline to exercise jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if ... the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (citing *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 (1974)) (holding that "federal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment").

**V. OPPORTUNITY TO AMEND**

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [10]

***12** I recommend that Plaintiff's claims against Defendant Utica Police Department be dismissed without leave to amend because it is not an entity that is amenable to suit. Moreover, to the extent that Plaintiff's claims against Defendant Utica Police Department are construed as against Defendant City of Utica, I recommend that they be dismissed without leave to amend because (1) Plaintiff's claims regarding Miller Park

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

are factually frivolous, and (2) a better pleading will not cure the issue with Plaintiff's claims alleging that the Utica Police Department failed to arrest Mr. Tinco and the criminal trespassers.

I recommend that Plaintiff's claims against Defendant Stanton be dismissed without leave to amend because he is entitled to absolute judicial immunity.

In addition, a better pleading will not cure the issue with Plaintiff's claim against the New York Attorney General's Office alleging that it failed to investigate and prosecute alleged criminal and improper conduct. As a result, to the extent that the Complaint is construed as asserting any claim against the New York Attorney General's Office, I recommend that it be dismissed without leave to amend.

To the extent that Plaintiff's Complaint is construed as asserting any claims against unnamed New York State officials for denying her ERAP application, I recommend that they be dismissed without leave to amend because (1) the officials in their official capacity are immune from suit pursuant to the Eleventh Amendment, and (2) there is no private cause of action to pursue Plaintiff's allegations.

Further, to the extent that Plaintiff asserted claims against Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, and Zuckerberg for stalking, cyber stalking, and harassment, I recommend that they be dismissed without leave to amend because there is no private cause of action for stalking, cyber stalking, and harassment.

This Court has serious doubts about whether Plaintiff can amend to assert actionable claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against Defendants Schumer, Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, Zuckerberg, Williams, Piersall, De Traglia, Aiello, Baye, Phillips, Grullon, French, Rios, John Does, James, Brin, Page, Pichai, Beaver, Marino, Durham, Newstead, and Hopskin, Schultz, Vomer, and Sanders. However, out of an abundance of caution, I recommend that Plaintiff be permitted to amend those claims against those Defendants. In addition, to the extent that Plaintiff sought to allege any defamation claim against Defendants Schultz, Vomer, and Sanders, I recommend that she be permitted to amend that claim too.

If Plaintiff chooses to file an amended complaint, she should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

## VI. PLAINTIFF'S MOTION TO APPOINT COUNSEL

***13** Plaintiff has also submitted a request for appointment of counsel. (Dkt. No. 5.)

As an initial matter, "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) (citations omitted). Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion. As a threshold matter, the court should ascertain whether the indigent's claims seem likely to be of substance. A motion for appointment of counsel may be properly denied if the court concludes that the plaintiff's "chances of success are highly dubious." *Leftridge*, 640 F.3d at 69. If the court finds that the claims have substance, the court should then consider:

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp.*, 28 F.3d at 1341 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

In the present matter, the Court has recommended dismissal of the action. As such, the Court cannot find that Plaintiff's claims are likely to be of substance. Plaintiff's motion (Dkt. No. 5) is therefore denied.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED only for purposes of filing and any appeal unless the trial court certifies in writing that the appeal is not taken in good faith**; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 5) is **DENIED without prejudice to refiling**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts (1) claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against Defendants Schumer, Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, Zuckerberg, Williams, Piersall, De Traglia, Aiello, Baye, Phillips, Grullon, French, Rios, John Does, James, Brin, Page, Pichai, Beaver, Marino, Durham, Newstead, and Hopskin, Schultz, Vomer, and Sanders, and (2) a defamation claim against Defendants Schultz, Vomer, and Sanders, because it fails to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts (1) claims against Defendants Utica Police Department, City of Utica, and Stanton; (2) claims against the New York Attorney General's Office and unnamed New York State officials; and (3) claims of stalking, cyber stalking, and harassment against Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, Zuckerberg, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

***14 ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [11]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [12] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3352758

## Footnotes

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

1 The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2 It is unclear if Plaintiff intended to state that she "accidentally menaced" the maintenance person or that she "accidentally" used mace or some form of pepper spray.

3 The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

4 Plaintiff is reminded that, although her application to proceed *in forma pauperis* has been granted, she is still required to pay fees that she may incur in this action, including copying and/or witness fees.

5 To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

6 "An official capacity suit against a municipal employee is a suit against the municipality itself." *Pittman v. Billings*, 20-CV-0422, 2020 WL 2079440, at *9 (N.D.N.Y. Apr. 30, 2020) (Baxter, M.J.), *report and recommendation adopted by* 2020 WL 2574631 (N.D.N.Y. May 21, 2020) (Sharpe, J.).

7 The "Coronavirus Aid Relief and Economic Security Act ("CARES Act"), which was continued by the [Consolidated Appropriations Act of 2021] CAA and the America Rescue Plan Act, allocated funds for rental assistance." *Turner*, 2022 WL 1606289, at *2.

8 The Court notes that, should this action proceed against Defendant Schumer and the United States Attorney make the requisite certification such that the United States be substituted as defendant, Plaintiff has failed to allege compliance with the administrative exhaustion requirements set forth in the Federal Tort Claims Act (FTCA). *See* *De Masi v. Schumer*, 608 F. Supp. 2d 516, 518-526 (S.D.N.Y. 2009) (replacing the United States as the allegedly liable party and proceeding as a FTCA suit where the plaintiff alleged that Senator Charles Schumer failed to respond to the plaintiff's repeated requests for assistance as one of Senator Schumer's constituents).

9 To the extent that Plaintiff attempts to allege a retaliation claim against Defendant Sanders pursuant to 42 U.S.C. § 1983 and the First Amendment, I recommend that it also be dismissed because Plaintiff fails to allege that she engaged in any protected speech. (*See generally* Dkt. No. 1.) Instead, Plaintiff alleges only that Defendant Sanders accused Plaintiff of "want[ing] [U]tica police fired" and asked "why should we help you[?]" after refusing to make an arrest. (Dkt. No. 1 at 7.) However, with additional factual allegations, Plaintiff may have a viable claim against Defendant Sanders. *See generally* *Rudd v. City of Norton Shores, Michigan*, 977 F.3d 503, 513-516 (6th Cir. 2020) (citing *Briner v. City of Ontario*, 370 F. App'x 682, 700 (6th Cir. 2010); *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)) (holding that (1) "[t]he freedom of speech ... protects the right of an ordinary citizen to criticize public officials ... without fear of criminal or civil repercussions," and thus, formal petitions including citizen complaints and informal requests for police assistance qualify as protected petitioning of the government, and (2) although " 'the right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views[,]' [a]nd individuals have no constitutional entitlement to police protection[,].... the 'unconstitutional conditions' places limits on the government's ability to deny an otherwise discretionary benefit in retaliation for a person's protected speech.... [thus the Sixth Circuit has previously held that a plaintiff] stated a plausible claim by

suggesting that the police 'refused to investigate the theft of [his] GMC truck in retaliation for complaints regarding the [police's] alleged failure to properly investigate [an earlier] burglary[.]' ").

10 *See also* *Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

11 The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

12 If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 2986825
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Sheila ROBINSON, Plaintiff,
v.
Mark WILLIAMS, Utica NY, Police Officers 1-12; Kyle Piersall, Utica NY, Police Officers 1-12; John DeTraglia, Utica NY, Police Officers 1-12; Joseph Aiello, Utica NY, Police Officers 1-12; Brian Baye, Utica NY, Police Officers 1-12; Marissa Vomer, Utica NY, Police Officers 1-12; K. Phillips, Utica NY, Police Officers 1-12; Benny Grullon, Utica NY, Police Officers 1-12; Derek Shultz, Utica NY, Police Officers 1-12; Reginald Sanders, Utica NY, Police Officers 1-12; Brian French, Utica NY, Police Officers 1-12; Hiram Rios, Utica NY, Police Officers 1-12; Louis L. Stanton, New York State Judge; John Does, Unknown New York State Erap Officials; Letitia James, New York State Attorney General; Chuck Schumer, U.S. Senator for New York; Amazon.com; Jeff Bezos, CEO of Amazon.com; Facebook.com; Mark Zuckerberg, CEO of Facebook.com; Google.com; Sergin Brin, of Google; Larry Page, of Google; Sundar Pichai, CEO of Google; Zazzle.com; Robert Beaver, CEO of Zazzle.com; Cafepress.com; Bob Marino, CEO of Cafepress.com; Fred Durham, of Cafepress.com; Redbubble.com; Barry Newstead, of Redbubble.com; Martin Hopskin, of Redbubble.com; Utica New York Police Dept., and City of Utica, New York, Defendants.

6:22-CV-0982 (GTS/ML)
|
Signed April 18, 2023

**Attorneys and Law Firms**

SHEILA ROBINSON, Plaintiff, Pro Se, 939 Ontario Avenue, Niagara Falls, New York 14301.

**DECISION and ORDER**

GLENN T. SUDDABY, United States District Judge

***1** Currently before the Court, in this *pro se* civil rights action filed by Sheila Robinson ("Plaintiff") against the above-captioned individuals and entities ("Defendants"), are (1) United States Magistrate Judge Miroslav Lovric's Report-Recommendation recommending that some of the claims in Plaintiff's Complaint be *sua sponte* dismissed without leave to amend, and that the remaining claims in that Complaint be *sua sponte* dismissed with leave to amend, and (2) Plaintiff's Objections to the Report-Recommendation. (Dkt. Nos. 6, 9.)

After carefully reviewing the relevant filings in this action, the Court finds no error in the Report-Recommendation, clear or otherwise:[1] Magistrate Judge Lovric employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court accepts and adopts the Report-Recommendation for the reasons stated therein. To those reasons, the Court adds only two points.

First, even when construed with the utmost of special liberality, Plaintiff's "Objections" fail to assert a *specific* challenge to the Report-Recommendation. (*Compare* Dkt. No. 9 *with* Dkt. No. 6.)[2] As a result, the "challenged portions" of the Report-Recommendation are entitled to only a clear-error review. In any event, even if the Court were to subject those portions of the Report-Recommendation to a de novo review, the Court would find that they survive that review.

***2** Second, rather than wait for the undersigned's ruling on Magistrate Judge Lovric's Report-Recommendation, Plaintiff has attempted to file an Amended Complaint. (Dkt. No. 10.) This litigation practice has complicated matters because, even assuming that Plaintiff had an absolute right to file such an Amended Complaint under Fed. R. Civ. P. 15(a)(1) despite the fact that she had not yet served her Complaint,[3] an amended complaint supersedes an original complaint in all respects.[4] This means that, arguably, Plaintiff's Amended Complaint has partially mooted Magistrate Judge Lovric's Report-Recommendation, which analyzed Plaintiff's *original* Complaint.

Out of a desire for judicial efficiency, the Court is tempted to apply the recommendations in the Report-Recommendation to Plaintiff's Amended Complaint. However, the Court is mindful of the Second Circuit's admonition that a *pro se* plaintiff's request to amend her complaint when a motion to dismiss is pending should be denied only without prejudice, or perhaps stayed, until she has had the benefit of the district court's ruling on the motion to dismiss.[5]

For all of these reasons, the Court has chosen to apply Magistrate Judge Lovric's Report-Recommendation to Plaintiff's original Complaint while deeming Plaintiff's Amended Complaint as a *proposed* Amended Complaint (out of special solicitude to Plaintiff as a *pro se* civil rights litigant), and holding that proposed Amended Complaint in abeyance pending confirmation from Plaintiff that it is indeed the Amended Complaint on which she wishes to proceed.

***3 ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Lovric's Report-Recommendation (Dkt. No. 6) is **ACCEPTED** and **ADOPTED**; and it is further

**ORDERED** that the following claims in Plaintiff's Complaint (Dkt. No. 1) are **DISMISSED**: (1) Plaintiff's claims against Utica Police Department, the City of Utica, and Judge Stanton; (2) Plaintiff's claims against the New York State Attorney General and unnamed New York State officials; and (3) Plaintiff's stalking claims, cyberstalking claims, and harassment claims against Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, and Zuckerberg; and it is further

**ORDERED** that the remaining claims in Plaintiff's Complaint (Dkt. No. 1) **shall be DISMISSED** without further Order of this Court **UNLESS**, within **THIRTY (30) DAYS** of this Report-Recommendation, Plaintiff files an **AMENDED COMPLAINT** that corrects the pleading defects identified in those claims, which are specified as follows: (1) Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, and 1986 against Defendants Schumer, Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, Zuckerberg, Williams, Piersall, DeTraglia, Aiello, Baye, Phillips, Grullon, French, Rios, John Does, James, Brin, Page, Pichai, Beaver, Marino, Durham, Newstead, Hopskin, Schultz, Vomer, and Sanders; and (2) Plaintiff's defamation claims against Defendants Schultz, Vomer, and Sanders; and it is further

**ORDERED** that, more specifically, within **THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiff shall do one of the following two things: (1) notify the Court in writing that her proposed Amended Complaint (Dkt. No. 10) is indeed the Amended Complaint on which she wishes to proceed, or (2) file a revised Amended Complaint; and it is further

**ORDERED** that, upon Plaintiff's fulfillment of one of the conditions set forth in the preceding paragraph (or, in the absence of his fulfillment of either condition, after the passage of thirty days), Plaintiff's operative Amended Complaint shall be referred to Magistrate Judge Lovric for review of its pleading sufficiency pursuant to 28 U.S.C. § 1915(e) (as well as his management of pretrial matters).

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2986825

## Footnotes

1 When no objection is made to a report-recommendation (or when only a *general* objection is made to a report-recommendation), the Court subjects that report-recommendation to only a clear-error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a clear-error review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

2 When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c); *see also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII

claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

3 Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure provides that "[a] party may amend its pleading once as a matter of course ***within*** ... 21 days after serving it...." Fed. R. Civ. P. 15(a)(1)(A) (emphasis added). Here, Plaintiff never served her Complaint; thus, she is arguably not yet ***within*** the 21-day window in which she may filed an Amended Complaint as a matter of course. *Compare Morris v. New York State Gaming Comm'n*, 18-CV-0384, 2019 WL 2423716, at *4 (W.D.N.Y. March 14, 2019) ("Because Plaintiff never served the original Complaint, the 21-day time limit to file an amended complaint under Rule 15(a)(1)(A) never ***commenced***.") (emphasis added) *with Henderson v. Wells Fargo Bank, NA*, 13-CV-0378, 2015 WL 630438, at *2 (D. Conn. Feb. 13, 2015) ("Fed. R. Civ. P. 15(a) provides that a 'party may amend its pleading once as a matter of course within ... 21 days after serving it.' Because Plaintiff has not yet served Defendant with the complaint, her motion is granted although unnecessary because leave of the Court is not required.").

4 *See Int'lControls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect."); 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1476, at 556-57 (2d ed. 1990) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified."); *cf.* N.D.N.Y. L.R. 7.1(a)(4) ("[T]he proposed amended pleading ... will supersede the pleading sought to be amended in all respects.").

5 *See Cresci v. Mohawk Valley Community College*, 693 F. App'x 21, 25 (2d Cir. June 2, 2017) ("The court's criticism of Cresci for failure to submit a proposed amended complaint before learning whether, and in what respects, the court would find deficiencies was unjustified, and the court's denial of leave to replead, simultaneously with its decision that the complaint was defective, effectively deprived Cresci of a reasonable opportunity to seek leave to amend.").

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3403519
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Howard WEISMAN, Plaintiff,
v.
Paul BAUR, Wyomissing Borough Police Detective, et al., Defendants.

Civil No. 5:20-cv-06100-JMG
|
Filed 08/04/2021

**Attorneys and Law Firms**

Howard Weisman, Reading, PA, Pro Se.

**MEMORANDUM OPINION**

GALLAGHER, United States District Court Judge

***1** Plaintiff Howard Weisman, proceeding *pro se*, raises claims against seven defendants who purportedly colluded to commit "violations of professional conduct, ethics, misdemeanors & felonies." Am. Compl. ¶ 23, ECF No. 11. [1] For the reasons set forth below, we will order Plaintiff to show cause why the case should not be dismissed for lack of subject matter jurisdiction.

**I. ALLEGATIONS**

Plaintiff brings claims against Wyomissing Borough Police Detective Paul C. Baur, the Borough of Wyomissing, three employees of a Wyomissing diner—George Zeppos, Eleny Zeppos, and Desiree Dahms-Gehr—and the employees' counsel (collectively, "Defendants"). *See id.* ¶¶ 2–6. The case arises from "an un-related employment dispute" between Plaintiff and the diner employees. *Id.* ¶ 2.

Defendants allegedly conspired to intimidate Plaintiff instead of settling the dispute. *Id.* ¶¶ 3, 6–8. To that end, Detective Baur personally delivered a letter to Plaintiff that cautioned him not to "step foot on any of the properties owned or managed by Mr. and Mrs. Zeppos and to have no contact with them or their families or employees." Am. Compl. Ex. A; Am. Compl. ¶ 14. Plaintiff alleges that this "message of intimidation" prevented him "from asserting his rights to pursue legal remedy & free speech." Am. Compl. ¶¶ 6, 23. In support, Plaintiff invokes five federal criminal statutes along with a federal regulation that proscribes abuse of office by those who act or purport to act in an official capacity for an Indian tribe. *Id.* ¶¶ 9–10.

**II. DISCUSSION**

Although Defendants recently filed a motion to dismiss, *see* Mot. 7–14, ECF No 13-2, we are "obliged to address issues of subject-matter jurisdiction *sua sponte*." *Minford v. Berks Cnty. (Inc.)*, No. 14-mc-224, 2014 WL 4858112, at *1 (E.D. Pa. Sept. 29, 2014) (citing *Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Phila.*, 657 F.2d 29, 36 (3d Cir. 1981)); *see also Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) ("[A] court may raise jurisdictional issues *sua sponte*."). If we lack subject matter jurisdiction, we must dismiss the action. FED. R. CIV. P. 12(h)(3); *see also Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 267 (3d Cir. 2016) ("[F]ederal courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." (internal quotation marks and citation omitted)).

"Federal district courts have subject matter jurisdiction over civil actions that arise (1) under the Constitution, laws or treaties of the United States (*i.e.*, federal question jurisdiction), or (2) between citizens of different states where the matter in controversy exceeds $75,000 (*i.e.*, diversity jurisdiction)." *City of Newark v. Lawson*, 346 F. App'x 761, 763 (3d Cir. 2009) (citing 28 U.S.C. §§ 1331, 1332). Plaintiff pleads that he is a Pennsylvania citizen. Am. Compl. ¶ 1. The Borough of Wyomissing is not a citizen of a different state, so diversity jurisdiction does not exist here. *See Prater v. Am. Heritage Fed. Credit Union*, 351 F. Supp. 3d 912, 918 (E.D. Pa. 2019) ("Diversity jurisdiction requires complete diversity, which in turn requires that no plaintiff be a citizen of the same state as any defendant." (internal quotation marks and citation omitted)).

***2** We therefore turn to federal question jurisdiction. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). "For a claim to arise under the Constitution, laws or treaties of the United States, a right or immunity created by the Constitution or laws of the United States must be an essential element of the plaintiff's claim." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 939 F. Supp. 398, 399 (E.D. Pa. 1996) (citing *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127 (1974)). "Furthermore,

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

the cause of action must be created by the federal law or the vindication of a right under state law must turn upon the construction of that federal law." *Id.* (citing *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986)).

Here, Plaintiff does not raise any claims that would confer federal question jurisdiction. All the criminal statutes cited by Plaintiff "do not provide, explicitly or implicitly, private civil causes of action."[2] *Jung v. Bank of Am., N.A.*, No. 3:16-cv-00704, 2016 WL 5929273, at *3 (M.D. Pa. Aug. 2, 2016) (explaining that 18 U.S.C. §§ 241–242 and 18 U.S.C. § 371 do not provide private civil causes of action); *Nayak v. Voith Turbo, Inc.*, No. 1:14-cv-01053, 2015 WL 1605576, at *19 (M.D. Pa. Apr. 9, 2015) (same as to 18 U.S.C. § 201); *Humphrey v. Pa. Ct. of Common Pleas of Phila.*, No. 20-cv-2335, 2021 WL 268498, at *2 n.3 (E.D. Pa. Jan. 27, 2021) (same as to 18 U.S.C. § 2261A). Neither does the cited regulation.[3] *See Taverna v. Palmer Twp.*, No. 5:20-cv-0812-JDW, 2020 WL 5554387, at *4 (E.D. Pa. Sept. 16, 2020) (describing 25 C.F.R. § 11.448 as a regulation "that do[es] not allow private individuals to bring suit").

Construing the First Amended Complaint liberally as one invoking 42 U.S.C. § 1983—indeed, Plaintiff makes reference to a violation of his rights—fares no better. *See Draper v. Darby Twp. Police Dep't*, 777 F. Supp. 2d 850, 856 (E.D. Pa. 2011) ("[T]his court is bound to give a liberal construction to pro se pleadings."). This is because Section 1983 "is not a jurisdictional statute; it only fashions a remedy." *Gonzalez v. Young*, 560 F.2d 160, 164 (3d Cir. 1977); *see also* 6 FED. PROC., L. ED. § 11:287 (explaining that Section 1983 "only fashions a remedy and is not a jurisdictional statute so that persons asserting claims thereunder must look to other authority to obtain jurisdiction").

Again, the problem here is that the cited federal regulation and criminal statutes do not provide private causes of action, and Section 1983 "does not in and of itself create substantive rights." *Digianvittorio v. D'Antonio*, No. 96-6781, 1997 WL 13681, at *4 (E.D. Pa. Jan. 13, 1997). Alleged violations of these criminal and regulatory authorities, therefore, do not provide a basis on which we can exercise subject matter jurisdiction, even under a Section 1983 framework. *See, e.g.*, *Greene v. Sch. Dist. of Phila.*, No. 17-5444, 2019 WL 12117147, at *1 n.1 (E.D. Pa. Mar. 25, 2019) (dismissing Section 1983 action for lack of subject matter jurisdiction).

### III. CONCLUSION

***3** For the foregoing reasons, it appears that we lack subject matter jurisdiction over this action. That being said, "when addressing the issue of subject-matter jurisdiction *sua sponte*, courts should ordinarily give the plaintiff 'notice and an opportunity to respond.' " *Minford*, 2014 WL 4858112, at *6 (quoting *Schneller ex rel. Schneller v. Fox Subacute at Clara Burke*, 317 F. App'x 135, 138 (3d Cir. 2008)). Accordingly, we will afford Plaintiff twenty-one (21) days to file a response explaining how we have subject matter jurisdiction over this action. An appropriate order follows.

### All Citations

Not Reported in Fed. Supp., 2021 WL 3403519

## Footnotes

1 Plaintiff attached a First Amended Complaint to his proof of service. *See* ECF No. 11. We will treat the First Amended Complaint as the operative pleading. In any event, both the original and the amended complaint suffer the same jurisdictional defects.

2 The First Amended Complaint cites the following federal criminal statutes: 18 U.S.C. § 201 (bribery of public officials and witnesses), 18 U.S.C. § 241 (conspiracy against rights), 18 U.S.C. § 242 (deprivation of rights under color of law), 18 U.S.C. § 371 (conspiracy to commit offense or to defraud United States), and 18 U.S.C. § 2261A (stalking).

3 The First Amended Complaint cites 25 C.F.R. § 11.448.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.